[No. 6789.    Decided June 29, 1907.]

THE STATE OF WASHINGTON, on the Relation of Kent Lumber Company, Plaintiff, v. THE SUPERIOR COURT FOR KING COUNTY et al., Respondents.[1]

EMINENT DOMAIN—PROPERTY SUBJECT—PRIVATE ROAD—PUBLIC USE. A railroad operated by a lumber company is a private enterprise and the right of way is subject to condemnation, where it appears that it was built six miles through a timbered country tributary to no public business, and used only for private business of the lumber company, although the company was authorized to carry freight and passengers.

SAME—PREVIOUSLY DEVOTED TO PUBLIC USE—RAILROAD CROSSINGS. Under Bal. Code, § 4335, one railroad may condemn a crossing over, or part of the right of way of, another road if there is a necessity therefor and the same can be taken without material detriment to the established road.

SAME—PROPERTY SUBJECT—EASEMENTS—MUNICIPAL CORPORATIONS —DISPOSAL OF PROPERTY. A right of way granted to a city for a pole line may be condemned for a railway right of way, where the

[1] Reported in 90 Pac. 663.

city consents and the two uses can run together; since the city can dispose of its property, and the interests of the owner of the fee after grant of an easement are subject to condemnation.

SAME—RESTRICTION ON EASEMENT.  An appropriator may limit by stipulation the rights or easements sought in condemnation proceedings.

SAME—RAILROAD CROSSINGS—NECESSITY.  The necessity for condemning a railroad crossing or parts of a right of way, is a reasonable necessity.

SAME—PUBLIC USE—RESTRICTIONS AS TO RAILWAY STATIONS.  The public use, and the right of a railway company to acquire right of way through a district 10 or 12 miles long, are not affected by the fact that, in order not to contaminate a city water supply, the company has agreed not to maintain stations or receive or take on passengers in such limited district, where the same appears to be a reasonable health requirement.

Certiorari to review an order of the superior court for King county, Gilliam, J., entered April 25, 1907, in favor of the petitioner in condemnation proceedings, adjudging certain lands necessary for a right of way for railway purposes. Affirmed.

*Charles E. Patterson* and *Charles R. Crouch*, for appellant.

*H. H. Field* and *C. S. Gleason*, for respondents.

MOUNT, J.—This case is presented here upon certiorari to review an order made in condemnation, adjudging certain lands necessary for the use of respondent railway company. The record shows that the respondent, Chicago, Milwaukee & St. Paul Railway Company, on April 3, 1907, filed a petition to condemn certain lands in King county for a right of way for railway purposes. The petition alleged all the facts necessary to authorize the condemnation. The relator appeared to that petition and answered, alleging in substance that the relator is a railroad corporation engaged in carrying passengers and freight for hire, and that it had appropriated a portion of the lands claimed by the petition for a public use, and was and is occupying the same with a railroad. It also alleged

that the city of Seattle had heretofore acquired an easement for erecting and maintaining pole lines for the transmission of light and power on and across all the lands sought by petitioner, and that if petitioner were allowed to acquire the right of way sought, the same would be detrimental to the easement of the city of Seattle. The answer also alleged that the city of Seattle had passed an ordinance authorizing the petitioner to occupy the lands sought as a right of way for its railway, provided the petitioner would 'not permit its cars to be open while running through Cedar River valley and over the lands sought to be condemned, the distance being about ten miles, and not permit ingress and egress to and from its trains, or receive or discharge freight, or maintain yards, switches, or other railroad facilities thereon; and that the petitioner had accepted and agreed to the conditions of such ordinance. It was alleged that, by reason of these facts, the petitioner is not a public service corporation as to that locality, and should not be permitted to condemn the interest of relator in said lands.

Upon the trial of the issues made by the pleadings, the facts appeared in substance as follows: The relator is a domestic corporation. One of its powers defined by its charter is to build, operate, and maintain railroads in King county, and carry freight and passengers over the same for hire. It owns and operates sawmills at Kent, its principal place of business. It also owns large tracts of timber lands in King county along Cedar river. In 1904 the city of Seattle acquired from relator, by condemnation for pole line purposes, a strip of land lying on both sides of Cedar river and west of Cedar lake. This strip of land is from eight hundred to twelve hundred feet in width. At the time of the condemnation by the city, the rights were reserved to the relator, the owner of the fee, to remove timber and maintain and construct logging roads over the said land for a certain length of time. The relator has constructed a railroad along the Cedar river,. and along the city pole line right of way, for a distance of some two or

three miles, and has in operation, including side tracks, about six miles of railway. This railway has been used for hauling logs to its mills at Kent. It has not done, nor has it pretended to do, a public business. In 1906 the respondent, Chicago, Milwaukee & St. Paul Railway Company, located its route of railway along Cedar river and through the lands which the city of Seattle had condemned for pole line purposes. The city of Seattle by ordinance granted the railway company a right of way one hundred feet wide, through the lands in dispute, upon condition that no station should be established between certain points and no stops made by trains for the purpose of receiving or discharging passengers upon the lands so granted, and other conditions. These conditions were accepted by the railway company. At two places the right of way sought to be condemned in this action infringes longitudinally upon the railway of relator for short distances, and at another place the two lines cross each other. In the petition for condemnation the respondent stipulates to erect and maintain an overhead crossing for relator, and a written stipulation to the same effect was filed at the trial.

The relator contends, first, that, because it is a public service corporation, the respondent company is not authorized to condemn any part of relator's railway. The record in this case is convincing that relator's railroad is in no sense a public service road. It is true, the articles of incorporation recite that one of the purposes of the Kent Lumber Company is to construct railroads and to carry freight and passengers thereon, and it is true that the corporation has built about six miles of road, including side tracks, through a timbered section of country; and there was also evidence to the effect that relator was willing to carry freight and passengers for the public for hire. But it was also shown that there was no substantial equipment for such service. The Kent Lumber Company maintains no stations, and no schedules for train service, and no rates for freight or passenger traffic. The road was so located that there is no public business tributary to it, and

it does no business except the private business of the Kent
Lumber Company. We think the trial court correctly found
that relator's railroad was a private enterprise, for use only
in its own private business, viz., hauling logs and timber to
its mill, and therefore was subject to be condemned. But
even if relator's road were a common·carrier, the respondent
company was authorized to condemn a crossing under the pro-
visions of the statute, Bal. Code, § 4335 (P. C. § 7090) ; and
also to take a portion of its right of way or road where there
is necessity therefor, and where the same may be taken with-
out material detriment to the established road. *State ex rel.
Columbia Valley R. Co. v. Superior Court*, 45 Wash. 316, 88
Pac. 332, and cases cited. The law is also settled in this state
that respondent may limit by stipulation the rights or ease-
ments which it seeks to acquire, and such stipulation is binding
upon the landowner. *Oregon R. & Nav. Co. v. Owsley*, 3
Wash. Ter. 38, 13 Pac. 186; *Seattle etc. R. Co. v. State*, 7
Wash. 150, 34 Pac. 551, 38 Am. St. 866, 22 L. R. A. 217;
*Seattle etc. R. Co. v. Roeder*, 30 Wash. 244, 70 Pac. 498.

Relator also contends that respondent might have located
its right of way at some place other than the place selected,
and some evidence was introduced to this effect. But the term
"necessity," as used in the statute, does not mean an absolute
necessity and that there shall be no other place for the loca-
tion of the road, but means a reasonable necessity depending
upon the circumstances of the particular case. *Samish River
Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670;
2 Lewis, Eminent Domain (2d ed.), § 393. We think such
necessity is shown here.

Relator also contends that, because no station will be per-
mitted and no traffic received by the respondent railway com-
pany for a distance of some ten or twelve miles along the
Cedar river, therefore the enterprise is not a public use within
this limited territory, and that the right of eminent domain
should be denied. It was shown that this condition was de-
manded by the city of Seattle and accepted by the respondent

company, in order that the water supply of the city might not be contaminated by the operation or construction of the road. This seems to have been a reasonable requirement for the protection of the health of the citizens of Seattle. The fact that for a distance of ten or twelve miles the railway company agrees not to maintain stations or receive and discharge passengers or freight, does not take away the public character of the railway or make it any the less a common carrier. There are of necessity long stretches of track where trains do not stop for business and where no stations are maintained. Business is received at reasonable intervals and fixed places where the public are best and most reasonably accommodated. These intervals are sometimes regulated by the statute and sometimes by the carriers themselves. But where the statute does not fix such stations, it would seem that a landowner could not, as a matter of right, demand a station on his property or at some place designated by him, and in case of the refusal of the carrier to comply with such demand, that such carrier would thereby change its character as a common carrier. Stations must be established and business received at certain reasonable points. Otherwise the business of the carrier might become impossible of orderly transaction. The fact that the railway company agrees not to construct a station or to receive business within the limited district, appears upon this record to be reasonable. It clearly does not take away from the respondent the right or power of eminent domain.

It is also contended that the respondent railway company is not authorized to appropriate this land, for the reason that it has already been appropriated by the city for a pole line for the transmission of electricity to said city and for the further purpose of protecting its water supply. We may assume for the purposes of this case, without deciding, that relator can raise these objections. It appears, that the city has granted its permission for a right of way to respondent company; that the city has power to acquire property or to dispose of the same as the interests of the same require. Pierce's Code,

§§ 3728, 3732, 3735 (Bal. Code, §§ 735, 739, 742); § 1 of the city charter. While the city does not own the fee, it owns an interest in the land which may be waived or granted to another public use (*Seattle v. Columbia etc. R. Co.*, 6 Wash. 379, 33 Pac. 1048), subject to the rights of the owner of the fee. Whatever rights the owner of the fee has left are subject to condemnation for a public use, especially where the two uses can run together, as appears to be the case here.

We find no error in the record. The order of the lower court is therefore affirmed.

HADLEY, C. J., DUNBAR, ROOT, FULLERTON, CROW, and RUDKIN, JJ., concur.