[No. 6813.   Decided February 25, 1908.]

NORTH COAST RAILWAY, *Petitioner,* v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Claimants.*[1]

EMINENT DOMAIN—PROPERTY DEVOTED TO PUBLIC USE—NECESSITY. A Congressional grant of a railroad right of way of a certain width is not conclusive of the fact that the entire width was necessary for the purposes of the railroad, as against another railroad seeking to condemn a portion thereof for public purposes.

SAME.   The right of eminent domain under state laws may be exercised by a railroad company to condemn a longitudinal portion of a right of way granted by Congress to another railroad company, if public necessity therefor exists and the occupying railroad does not require the portion taken.

SAME—COMPENSATION—RAILROADS—GRANTS.   A railroad company seeking to condemn a portion of the right of way of another railroad through a mountain pass, seeking to acquire a tract outside of the roadbed of the other company, is not relieved from paying compensation by virtue of U. S. Stat. at Large, ch. 152, p. 482, § 2, providing for common usage and occupancy by railroad companies of roadbeds through a canyon, pass, or defile, since no common usage is sought.

[1]Reported in 94 Pac. 112.

34—48 WASH.

SAME—WAIVER OF OBJECTION TO DAMAGES. Where a petitioner in condemnation proceedings asks that the damages be ascertained, it cannot contend, upon review by certiorari, that no damages can be awarded by reason of petitioner's right of common usage.

SAME—NECESSITY FOR TAKING RAILROAD RIGHT OF WAY—EVIDENCE —SUFFICIENCY. A reasonable public necessity, authorizing the condemnation of a longitudinal portion of a railroad right of way through a mountain pass for three-fifths of a mile, appears where the same is wanted for a railroad right of way through the pass, there being no other way except by the construction of a tunnel, costing $200,000, or by crossing a swift mountain stream twice and using unsafe substructure through low lands swept by floods, involving a much greater expenditure of money than the other route and increased dangers to the public.

SAME. A finding that double tracks of a transcontinental railroad through a mountain pass, where but one track has been used, will answer the necessity of future needs, is justified by evidence that the company is constructing another line of railway for the purpose of relieving the present single track of through traffic.

SAME—ORDER OF CONDEMNATION—MODIFICATION. Upon condemnation of a longitudinal portion of a railroad right of way through a mountain pass, an order of condemnation of a strip commencing twenty-five feet from the center of the present track in case the grade thereof is not raised within one year, and commencing forty-five feet from the center of the track if the grade is raised, will be modified, on certiorari, making it forty-five feet unconditionally, where it appears that the same will answer all the purposes of the petitioner.

SAME. An order condemning a railroad right affecting a highway, requiring the petitioner to relocate and remove the highway within a limited time, will be modified, on certiorari, where there appears no necessity for such time limit.

Certiorari to review a judgment of the superior court for Yakima county, Rigg, J., entered May 13, 1907, upon findings in favor of the petitioner, after a trial on the merits before the court without a jury, adjudging a public use and ordering an assessment of damages in a condemnation proceeding. Affirmed.

*H. J. Snively* and *Danson & Williams* (*Fred H. Moore*, of counsel), for petitioner.

*B. S. Grosscup* and *Ira P. Englehart*, for claimants.

HADLEY, C. J.—This proceeding was instituted by the North Coast Railway as petitioner against the Northern Pacific Railway Company and others as claimants, for the purpose of condemning a right of way for the petitioning corporation. The land which the petitioner seeks to condemn lies within the right of way of the claimant Northern Pacific Railway Company, in Yakima county. The claimant company's title to its right of way in general was acquired from the United States through an act of Congress passed in 1864, which granted to claimant's predecessor in interest, Northern Pacific Railroad Company, two hundred feet in width on each side of its railroad where it should pass through the public lands.

Prior to the passage of the act granting to claimant's predecessor the right of way as aforesaid, and in the year 1859, the United States entered into a treaty with the Yakima Indians, whereby certain lands were reserved to the Indians, the territory covered thereby being commonly known as the Yakima Indian reservation. That portion of the right of way here in question lies within said reservation, and was not a part of the public lands, within the meaning of the said act of Congress, which the United States could then absolutely grant. The reservation thereof to the Indians, therefore, remained in force until the year 1885, when their rights therein, to the extent of a strip of two hundred and fifty feet in width, were extinguished by their agreement with the United States and by their release of a strip of land extending one hundred and twenty-five feet "on each side of the line laid down on the map of definite location of the route of the Northern Pacific railroad wherever said line runs through said reservation." For the above reasons the right of way of claimant at the point in question is two hundred and fifty feet in width, whereas the usual width under the original grant was four hundred feet. At the place in question the claimant's right of way extends in a northerly and southerly direction follow-

ing the westerly shore of the Yakima river. The claimant's present track lies a short distance from the west bank of said river, and its right of way extends still further to the west, a distance of one hundred and twenty-five feet from the center line of its present track. It is a part of the last-named one hundred and twenty-five feet that the petitioner seeks to condemn. The strip sought by petitioner extends longitudinally on the west of claimant's track an entire distance of three thousand nine hundred and sixty-five feet from north to south over claimant's right of way, and it is of irregular width. It extends between the spurs of the Ahtanum and Rattlesnake mountains, and the place is known as "Union Gap."

The petition alleges, that the petitioner is a corporation duly organized under the laws of this state to construct, maintain, and operate railways within the state, and that it. is now engaged in the construction of a line of railway from Kiona, in Benton county, to the city of North Yakima, in Yakima county; that owing to. the topography of the country the petitioner cannot reasonably locate its railroad without going over the right of way of the claimant railway company, or incurring ruinous expense; that said Union Gap is a narrow defile with an abrupt mountain rising from the Yakima river on the west; that at the foot of the mountain and within a few feet of the river, the claimant railway company has constructed and is operating its line; that the mountain rises abruptly several hundred feet in height, and that in order to construct petitioner's road through said gap, the strip of land sought becomes necessary. The claimant railway company answered the petition by denials and by affirmative allegations, to the effect that the petitioner is not entitled to condemn any part of said right of way. A preliminary trial was had before the court to determine the question of public use and necessity, and that question was determined in favor of the petitioner. This is a proceeding in this court by writ of review to review the judgment of the trial court. Each

of the railway companies seeks to review certain features of the judgment as will hereinafter appear.

The claimant first contends that no part of the right of way granted to its predecessor, and which has passed to the claimant company, is subject to appropriation by any other railroad company. This contention is based upon the theory that the act of Congress which granted a right of way four hundred feet in width was in itself a conclusive determination that the entire amount granted was necessary for the public purposes of the grant, and that it is not a question for the courts to determine whether the whole of it is actually needed or not. The same argument is applied to the tract in question, the Indian title to which did not pass until the aforesaid treaty, which was long after the grant by the railway act of 1864, but which treaty was afterwards ratified by Congress, including the reduced width of the right of way. Upon this point claimant cites *Northern Pac. R. Co. v. Townsend,* 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044. Emphasis is placed by claimant upon the following language used in the opinion in the above case:

"Nor can it be rightfully contended that the portion of the right of way appropriated was not necessary for the execution of the powers conferred by Congress, for, as said in *Northern Pacific Railroad Co. v. Smith,* 171 U. S. 261, 275, speaking of the very grant under consideration: 'By granting a right of way four hundred feet in width, Congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance.' Neither courts nor juries, therefore, nor the general public, may be permitted to conjecture that a portion of such right of way is no longer needed for the use of the railroad and title to it has vested in whomsoever chooses to occupy the same. The whole of the granted right of way must be presumed to be necessary for the purposes of the railroad, as against a claim by an individual of an exclusive right of possession for private purposes."

It will be observed from the language quoted that the court had under consideration a question of title claimed through

adverse possession by an individual for private purposes, and it was stated in unmistakable language that in such a case the courts cannot say that the full amount of the original grant is no longer needed. Such a case, involving only individual and private considerations, is very different from one which involves public necessities. In order that it might be clearly understood that the court recognized such a necessary distinction, the following language was used in the same opinion:

"Of course, nothing that has been said in anywise imports that a right of way granted through the public domain within a state is not amenable to the police power of the state. Congress must have assumed when making this grant, for instance, that in the natural order of events, as settlements were made along the line of the railroad, crossings of the right of way would become necessary, and that other limitations in favor of the general public upon an exclusive right of occupancy by the railroad of its right of way might be justly imposed. But such limitations are in no sense analogous to claim of adverse ownership for private use."

It seems clear from the quotation last made that the Federal supreme court recognizes the power of the state to determine whether the whole of a right of way which has been created by Federal grant through an act of Congress is actually needed as against the requirements of the public service which arise with the increase of commerce and transportation necessities. It has been repeatedly held by this court that the power exists in this state, when public necessity requires it, for one railway or public service corporation to condemn a part of the right of way of another railway company or public service corporation which is not necessary for the exercise of the latter's franchise. *Seattle & Montana R. Co. v. Bellingham Bay & Eastern R. Co.,* 29 Wash. 491, 69 Pac. 1107; *State ex rel. Spokane Falls & N. R. Co. v. Superior Court,* 40 Wash. 389, 82 Pac. 417; *State ex rel. Columbia Valley R. Co. v. Superior Court,* 45 Wash. 316, 88 Pac. 332; *State ex rel. Kent Lumber Co. v. Superior Court,* 46 Wash. 516, 90

Pac. 663; *State ex rel. Skamania Boom Co. v. Superior Court,*
47 Wash. 166, 91 Pac. 637. It has also been repeatedly
held by other courts that a right of way of a railroad com-
pany, which has been acquired for that express purpose
through a Federal grant, is not exempt from the operation
of state laws of eminent domain. *Northern Pac. R. Co. v.
St. Paul etc. R. Co.,* 1 McCrary 302; *Union Pac. R. Co.
v. Burlington etc. R. Co.,* 1 McCrary 452; *Union Pac. R. Co.
v. Leavenworth etc. R. Co.,* 29 Fed. 728; *Illinois Cent. R. Co.
v. Chicago etc. R. Co.,* 26 Fed. 477.

It is true the most, if not all, of the last-cited cases related
to crossings of other railways over a right of way acquired
by Federal grant, whereas the tract here sought is not for
mere crossing purposes but is a longitudinal tract about three-
fifths of a mile in length, to be carved out of claimant's right
of way. The principle as to the power of eminent domain is,
however, the same in both cases, depending upon the necessi-
ties of the occupying railway and those of the public service.
This court has held that a longitudinal portion of a right of
way may be condemned by another railway corporation where
the occupying railway does not actually need it, and where it
is needed by the other in the interest of the public service.
*Seattle & Montana R. Co. v. Bellingham Bay & Eastern R.
Co., supra.* It is, therefore, held here that the petitioner may
invoke the power of eminent domain to acquire a longitudinal
part of claimant's right of way if the showing as to the neces-
sities of the two companies in the interest of the public service
is sufficient to warrant it.

The petitioner argues that the place where it seeks to con-
demn is within a canyon, pass, or defile within the meaning
of the act of Congress of 1875. Stat. at Large, ch. 152,
p. 482. Section 2 of said act provides that a railroad com-
pany whose roadbed passes through a canyon, pass, or defile
"shall not prevent any other railroad company from the use
and occupancy of the said canyon, pass, or defile, for the pur-

poses of its road in common with the road first located or the crossing of other railroads at grade." It will be seen that the statute seems to contemplate a common occupancy by two or more railroads of a situation otherwise impossible to be utilized by more than one in passing from one section of the country to another. In its petition the petitioner does not seek to occupy a common roadbed with the claimant, and admits that the situation does not make such an occupancy necessary when it seeks a tract entirely distinct from claimant's roadbed. The evidence, and the court's findings also, show that such common occupancy is unnecessary. It is true the contracted situation and peculiar topography give rise to the necessity for acquiring a part of claimant's right of way at this particular place, if that necessity shall be found to exist. Otherwise the petitioner could pass without the limits of claimant's right of way. It does not follow, however, that the situation is that of a canyon, pass, or defile where the petitioner, by reason of extreme necessities and engineering difficulties, might have the right to force a common use and occupancy of the same ground. With this view it is unnecessary to examine the question discussed in the briefs as to whether the act of 1875, being subsequent to that granting the right of way, applies here.

At this point it is well to notice the contention of the petitioner, made in its brief, that it should not be required to pay the claimant any compensation for the appropriation which it seeks, if the appropriation shall be allowed. This contention is based upon the theory that the canyon act of 1875 applies to this situation, and that the absolute right to a common occupancy exists by reason thereof. From what was said in the last paragraph above it will be seen that the petitioner's contention in this respect cannot be sustained. If appropriation is made, the case belongs to the ordinary class of cases where mere topographical necessities make the appropriation of a part of the right of way necessary, but not

without the payment of compensation to the extent of the damages. Moreover, the petitioner in its petition prayed that the damages shall be ascertained, and the court adjudged that claimant is entitled to compensation for any damages it may sustain in the premises. So that in any event we think the petitioner is not in a position to ask a review of the court's order in the particular mentioned.

The claimant contends that a sufficient showing of necessity has not been made to authorize the condemnation of any part of its right of way. The record of the evidence is very extensive, and it is as impracticable as it is unnecessary to discuss the evidence in detail. It appears, however, that the Yakima river rises in the Cascade mountains and flows south and east, entering the Yakima valley on the north through Selah gap, and passing out at the south through Union gap. Ahtanum creek, flowing from the northwest, empties into the river just above Union gap, and through this gap pours the accumulated drainage of these two streams. The gap itself, as heretofore stated, is formed by the converging spurs of two ranges of mountains, and on the west side at the place in controversy, the mountain rapidly ascends from the bench occupied by claimant's track near the river bank. It is contended that petitioner can construct its line on the east side of the river. To do so, however, involves crossing and bridging the river twice, if the road shall first pass through the Yakima reservation on the south and then reach the city of North Yakima on the north, as is desired in order to carry out the purpose of serving the public. Furthermore, construction on the east side would not only involve a very much greater expenditure of money, but in addition to the hazards from two bridges crossing a swift mountain stream, the line would necessarily run over low-lying lands which are much flooded with water and in times of high water are swept with currents that would make the necessary substructure unsafe and the operation of trains thereon dangerous. It is also contended that,

even if petitioner constructs its line on the west side, it can do so without taking any part of claimant's right of way. To do so would require the construction of a tunnel, and the additional expense would approach $200,000. In addition to the difference in cost of construction, we must consider the perpetual expense of maintaining the tunnel and operating trains therein, together with the attendant dangers to the traveling and shipping public. It is true it is not shown to be impossible to construct and operate a line either on the east side or outside of claimant's right of way on the west side, if a sufficient amount of money is expended and the increased dangers are not considered. It does appear, however, that it is not reasonably practicable to adopt either of the routes proposed by claimant when all the surroundings are considered. Claimant contends that the necessity for the appropriation must be absolute, and argues that this court has so decided in *State ex rel. Portland & Seattle R. Co. v. Superior Court*, 45 Wash. 270, 88 Pac. 201. Reference ·is made to certain words contained in a quotation which we made in that opinion from *Sharon R. Co. v. Sharpsville R. Co.*, 122 Pa. St. 533, 17 Atl. 234. The quotation was merely used argumentatively, and we think it must be clear from our own language that we intended to hold that a reasonable public necessity is all that is required to authorize the condemnation of property already devoted to a public use. In any event there can be no mistake that we did so hold in the later case of *State ex rel. Skamania Boom Co. v. Superior Court, supra*. Within such rule we think the facts appearing in this case are sufficient to support condemnation.

The court did not find that the petitioner is entitled to condemn the tract as described in the petition, but found that it should be awarded a strip farther removed from claimant's roadbed, so that claimant may have ample room to construct another track. It was found that a double track line at this place will answer all the present and future necessities of

claimant. 'Claimant contends that this finding was without evidence upon which to base it. We think, however, that the finding was justified under the evidence of Mr. Levey, one of the vice-presidents of the claimant company, who testified that his company is now constructing a line down the north bank of the Columbia river for the purpose of avoiding the mountain grades in the carriage of through traffic. This new line will relieve the present single track line of much of the traffic it now carries, and if another track shall hereafter be constructed through Union gap, it certainly fairly appears that it will reasonably answer all of claimant's future necessities at that place.

In order to leave claimant room for an additional track to the west of its present track, the court established petitioner's line further up the mountain side. It was shown that claimant contemplates raising its grade at this place from about ten to fourteen feet, conforming to a general system of changing its grades in the locality. The court provided that the easterly boundary of petitioner's location shall be forty-five feet to the west of the center line of claimant's present track, provided that claimant shall raise its grade as aforesaid within one year after the petitioner shall remove the public highway from that place. Otherwise the easterly boundary of petitioner's location shall be twenty-five feet to the west of the center line of claimant's present track. It appears that, by agreement between the petitioner and Yakima county, the petitioner is to take care of the highway and relocate and reconstruct it so that neither railroad will interfere with it. The court further provided that the petitioner shall remove this highway within six months from the final adjudication of this action or suffer a dismissal. Both parties seek modifications of the order of the court. We think it should be modified. It was found that the petitioner can reasonably locate and operate its line within territory forty-five feet to the west of claimant's track, and that the said forty-five feet is necessary

for claimant's future use.    These findings are attacked by
the petitioner, but we think they are sustained by the record,
and shall not disturb them.    We see no reason for the varia-
tion of the width of the strip reserved to claimant by a dif-
ference of twenty feet, apparently as a mere penalty to claim-
ant if it shall not raise its grade within a year.    As the first
occupant, with full rights there, it is claimant's own affair
whether it shall raise its grade or not, and there seems to be
no reason why it shall be penalized if it shall not do so.    We
therefore think the order should be modified so as to establish
petitioner's location absolutely to the west of a line forty-five
feet to the west of the center of claimant's present track, and
that no time limit shall be fixed with reference to when claimant
shall raise its grade.

With regard to petitioner's construction before claimant's
grade may be raised, it is sufficient to say that the profile of
claimant's grade revision was submitted at the hearing of this
case, for the accuracy of which claimant must be bound and
responsible under such circumstances and assurances.    The
petitioner can proceed with its own construction, having ref-
erence to that profile if it becomes necessary to have regard
to claimant's future grade.    We also think the provision with
reference to petitioner's removing the highway should be
modified.    The purpose of requiring the early removal seems
to have been to prevent the highway from interfering with the
raising of claimant's grade, but inasmuch as claimant objects
to a time limit for doing that work, there seems to be no good
reason for requiring petitioner to so soon remove the road,
unless the necessity therefor shall arise.    We therefore think
the order should be modified to the effect that petitioner shall
remove the highway within six months after it shall receive
written notice from the claimant company to do so, the peti-
tioner, however, having the privilege to remove it sooner if
it shall voluntarily choose to do so.

The case is remanded with instructions to modify the order

in the particulars above indicated, and in all other respects the judgment is affirmed. Neither party shall recover its costs on this review.

CROW, RUDKIN, DUNBAR, and ROOT, JJ., concur.

FULLERTON and MOUNT, JJ., took no part.