[No. 8070. Department One. August 3, 1909.]

THE STATE OF WASHINGTON, *on the Relation of Milwaukee Terminal Railway Company,* Plaintiff, v. THE SUPERIOR COURT FOR KING COUNTY *et al.,* Respondents.[1]

EMINENT DOMAIN—RAILROADS—POWER TO CONDEMN—PUBLIC SERVICE—EXTENT—GOOD FAITH. A railway terminal company organized primarily to connect business enterprises of a city with terminals of a railroad company in another city, by means of tracks and car ferries, and to carry freight in car load lots between such points, is a railroad company entitled to condemn land, where it has shown its good faith by expending $100,000, and has under contract equipment that will cost $400,000 additional for barges, car floats, and terminals, although it owns no rolling stock.

[1]Reported in 103 Pac. 469, 104 Pac. 175.

SAME—PUBLIC USE—PRIOR USE BY RAILROAD—LAND LEASED TO PATRON. Strips of land owned by a railroad company, fifteen feet wide, adjacent to a street in which the railroad company has its railroad tracks, are not devoted to a public use so as to exempt them from condemnation for a public use by another railroad company, where it appears that they had never been used for railroad tracks but were in possession of a mill company under leases for nominal rent or rent free, and were used by the mill for loading platforms, although such use was a convenience to the mill as a patron of the owning railroad company; the test being the use to which the property is applied as a matter of right, and not the ownership.

SAME—NECESSITY—REASONABLENESS. In such a case, the question of the reasonable necessity requisite to authorize condemnation does not depend on the fact that other property might be appropriated for the purposes of the relator, nor on the fact that it would increase the cost to the mill company of loading cars and result in a loss of business to the defendant railway company, especially where the defendant has other property that can be used for loading platforms, as these are questions largely of expediency; it appearing that the route of relator's spur track is the most feasible one and reasonably necessary.

APPEAL—REHEARING. A rehearing will not be granted to enable the petitioner to present a question not raised on the original hearing or considered by the court.

Certiorari to review a judgment of the superior court for King county, W. H. Bogle, Esq., judge *pro tempore*, entered April 22, 1909, dismissing condemnation proceedings, upon finding a prior public use of the property sought to be condemned, after a hearing on the merits. Reversed.

*H. H. Field* and *George W. Korte*, for relator.

*F. V. Brown* and *Frederic G. Dorety*, for respondents, to the point that the use of property for loading platforms was a public use, cited: *Butte A. & P. R. Co. v. Montana Union R. Co.*, 16 Mont. 504, 41 Pac. 232, 50 Am. St. 508, 31 L. R. A. 298; *Hoke v. Georgia R. & Banking Co.*, 89 Ga. 215, 15 S. E. 124; *Mobile & G. R. Co. v. Alabama Midland R. Co.*, 87 Ala. 520, 6 South. 407; *Union Terminal R. Co. v. Kansas City Belt R. Co.*, 9 Kan. 281, 60 Pac. 541; *Louisiana*

*& N. W. R. Co. v. Vicksburg S. & P. R. Co.*, 112 La. 915, 36 South. 803; *Boston & Maine R. v. Lowell & Lawrence R.*, 124 Mass. 368; *Pittsburg Junction R. Co.'s Appeal* (Pa.), 6 Atl. 564. A railroad company seeking to condemn property connected with another company's right of way must show that the proposed taking will not interfere with the operations of the owning company. *State ex rel. Portland & Seattle R. Co. v. Superior Court*, 45 Wash. 270, 88 Pac. 201; *State ex rel. Spokane Falls & N. R. Co. v. Superior Court*, 40 Wash. 389, 82 Pac. 417; *Seattle & Montana R. Co. v. Bellingham Bay etc. R. Co.*, 29 Wash. 491, 69 Pac. 1107, 92 Am. St. 907; Lewis, Eminent Domain (2d ed.), p. 627, § 267, p. 629, § 267a; 10 Am. & Eng. Ency. Law (2d ed.), 1096, 1097; 15 Cyc. 618; *Atchison etc. R. Co. v. Kansas City etc. R. Co.*, 67 Kan. 569, 70 Pac. 939, 73 Pac. 899; *Barre R. Co. v. Montpelier & W. R. Co.*, 61 Vt. 1, 17 Atl. 923, 15 Am. St. 877, 4 L. R. A. 785; *Birmingham & A. R. Co. v. Louisville & N. R. Co.*, 152 Ala. 422, 44 South. 679.

Gose, J.—The Great Northern Railway Company, hereafter called the respondent, is the owner of two detached strips of land, in that part of Seattle formerly known as Ballard, and lying southerly of, and adjacent to, Shilshole avenue. The tract designated No. 1 is 150 feet in length, and tract No. 2 is 250 feet in length. Each tract is fifteen feet in width. There is an intervening strip of land, seventy-five feet in length and fifteen feet in width, which is owned by the Bolcom Mills Company, subject to an easement or right of way in the Milwaukee Terminal Railway Company, hereafter called the relator. Between the west line of Fifteenth avenue northwest and tract No. 1, and southerly of and contiguous to Shilshole avenue, the Motor Shingle Company owns a strip of land fifteen feet in width and 122 74-100 feet in length, which the relator is condemning in a separate proceeding. At the westerly end of tract No. 2, lying along the south side of Shilshole avenue, the respondent railway

company owns a strip of land 194 74-100 feet in length and fifteen feet in width, not embraced in this condemnation proceeding. The Bolcom Mills plant extends southerly from tract No. 2 to the water front. Tracts 1 and 2 were acquired by the Seattle and Montana Railway Company in 1890, and by the respondent company July 1, 1907. The Bolcom Mills Company has occupied these tracts since 1890.

There are three railroad tracks in Shilshole avenue, as follows: (1) Mills Siding, near the south line of the avenue, used jointly by the Great Northern and Northern Pacific Railway Companies for loading purposes; (2) the Great Northern track; (3) the Northern Pacific track. Bolcom Mills Company has a loading platform fifty feet in width on the south side of Shilshole avenue. The two tracts in controversy are covered by this platform. The plant of the Bolcom Mills does not extend along tract No. 1.

On the 16th day of February, 1909, relator filed its petition in the lower court to condemn for its proposed railroad track all of tract No. 1 and 55 26-100 feet off the easterly end of tract No. 2. Tract No. 2 is westerly from tract No. 1. At the south end of Fifteenth avenue, at the harbor line, the relator is constructing a transfer bridge. From this bridge its proposed line of road extends up Fifteenth avenue, with spur tracks up Shilshole avenue and at Thirteenth avenue. It has under construction two barges, each capable of carrying twelve loaded cars. It contemplates the construction of a car transfer bridge at the terminals of the Chicago, Milwaukee & Puget Sound Railroad Company, at Seattle and Tacoma. Its barges will be towed by tugs propelled by steam or electric power. It is negotiating with the Seattle Electric Company to handle the cars with electric motors. Its entire capital stock has been subscribed and is owned by the Chicago, Milwaukee & Puget Sound Railway Company. The relator has expended $100,000, and has under contract equipment which will cost about $400,000 additional. These expenditures cover construction of barges, car floats, and ter-

minals at the tide lands at Tacoma, Seattle, and Ballard.   It is not now operating any railroad or transfer plant, nor does it own any locomotives, freight or passenger cars, nor has it any locomotives or cars under construction.

At the trial, the parties stipulated, that the board of trustees of the relator had adopted its definite location of certain tracks which had theretofore been located in Fifteenth avenue, and a certain spur track extending from a point of connection with said tracks in Fifteenth avenue in a northwesterly direction across the land sought to be condemned; that it is a corporation organized under the laws of the state for the objects set forth in its petition.   The petition avers that the relator is authorized by its articles of incorporation to locate, construct, and operate railroads, freight terminals, transfer and switching grounds, docks, wharves, slips, and landing places, and by means thereof to do and carry on the business of a common carrier of freight and passengers for hire in this state, and to own, maintain, and operate boats, barges, floats, locomotives, cars, motors, and other means of transportation, and to operate the same by steam, electric or other power, for carrying on its business of a common carrier, and to acquire by purchase, condemnation, or otherwise, land, rights of way, and easements for the construction, maintenance, and operation of railroad tracks and other facilities above mentioned; that it has surveyed and located railroad tracks in that part of the city of Seattle known as Ballard, and that it proposes to construct, maintain, and operate said tracks in connection with the transfer bridge and car ferry to be located at the southerly terminus of Fifteenth avenue, which bridge, car ferry, and tracks are to be used and operated in carrying on its business as a common carrier; that it intends to construct said tracks in said street and across the tracks heretofore mentioned, and to use the tracks for switching, transferring, and delivering both empty and loaded cars as a means of transferring said cars to and from

the mills and industries along the tracks to and from terminal grounds, docks, warehouses, and stations of other railway companies and in the city of Seattle in the prosecution of its business as a common carrier; that for these purposes it is necessary for it to acquire such property.

The case was tried to the court on the petition, the stipulation, and oral testimony; whereupon the court made its findings of fact as follows:

"(1) That the Terminal Company is a railroad company and that the service it has performed and will perform, is a public service and a public convenience.

"(2) That the contemplated use for which the land described in the petition is sought to be appropriated is really a public use; that the public interest requires the prosecution of such enterprise and that said land is required and necessary for the purposes of the construction, maintenance and operation of petitioner's proposed railroad.

"(3) That the land sought to be appropriated is already appropriated and devoted to a prior public use, to wit, to the use of the Great Northern Railway Company; that said lands are needed by said company to enable it to efficiently discharge its duties as such public service and common carrier corporation, and that the appropriation thereof by the petitioner will interfere with the operation of the track of the respondent, now located upon the property adjoining the same, and that the respondent would suffer a material detriment in the operation of its said track by being deprived of said property."

As a conclusion of law, the court found that the property could not be appropriated, and entered a judgment of dismissal. The relator excepted to the third finding of fact, and the conclusion of law. The respondent excepted to the findings of fact 1 and 2. On the application of the relator, the court granted a writ of review. The relator assigns error on the third finding of fact, the conclusion of law, and the judgment of dismissal.

The respondent urges two propositions in support of the judgment, (1) that the relator is not a railroad corporation

within the meaning of the eminent domain statute; (2) that
the property sought to be condemned is already devoted to
a public use, and that there is not a sufficient showing of
necessity for its appropriation. We will consider these prop-
ositions in the order stated.

Pierce's Code, §§ 7053, 7054 [Bal. Code, §§ 4250, 4251,
as amended, L. '05, p. 27.] provides the manner of executing
articles of incorporation "for building, equipping, and run-
ning railroads," and provides that no railroad corporation
"shall commence business or institute proceedings to condemn
land for corporate purposes until the whole amount of its
capital stock has been subscribed." It has been stipulated
that the relator has complied with the terms of this statute.
The statute does not require that the aricles of incorporation
shall state the route, length or points of termini of the road.
In support of its first contention, the respondents cite *State
ex rel. Kent Lumber Co. v. Superior Court*, 46 Wash. 516,
90 Pac. 663; *People ex rel. Bernard v. Cheeseman*, 7 Colo.
376, 3 Pac. 716; *New Orleans Terminal Co. v. Teller*, 113
La. 733, 37 South. 624; *In re Niagara Falls & W. R. Co.*,
108 N. Y. 375, 15 N. E. 429; *Garbutt Lumber Co. v. Georgia
& A. R. Co.*, 111 Ga. 714, 36 S. E. 942, and *Memphis Freight
Co. v. Memphis*, 4 Cold. 419.

In the *Kent Lumber Co.* case the court held that the re-
lator's railroad was a private one, used for hauling logs
to its mill, and that the relator was not engaged in a
public business. In the *Cheeseman* case the court concluded
that the condemnor has "no intention of constructing or
operating a railroad." In the *New Orleans Terminal* case
evidence had been excluded tending to show that the plaintiff
was a mere paper corporation, that there was no subscription
of its capital stock, that it had assumed the garb of a rail-
way corporation in order to appropriate property for purely
speculative purposes, that no lines had been surveyed, nor
workmen employed to construct tracks and terminals, and
no work had been done toward building any kind of a rail-

road.   This was held to be error.   In the *Niagara Falls* case
the proposed road did not connect with a public highway, and
it could be reached only by passing over land belonging to the
state or the land of private owners.   There was no habita-
tion, traffic, or business along the line of the road, except
in carrying passengers to see the river and returning them
to the point from which they started.   Its season of opera-
tion was confined to the carrying of sightseers during about
four months of the year.   In the *Garbutt Lumber Co.* case
the lumber company owned timber on both sides of a line of
railroad and sought to appropriate a right of way across
the right of way for a tram road to accommodate its private
business in the handling of its own timber.   In the *Memphis*
case the plaintiff sought to appropriate private property to
be used by it in loading and unloading freight on or from
boats that touched at the port of Memphis.   The court held
in each of these cases that the proposed use was a private
one.

In *Bridwell v. Gate City Terminal Co.*, 127 Ga. 520, 56
S. E. 624, 10 L. R. A. (N. S.) 909, the party seeking to
condemn was organized as a terminal company, and was un-
dertaking to build a road principally within the city of At-
lanta.   Speaking to the question as to whether it was a rail-
road company within the meaning of the law, at page 523,
the court said:

"No minimum limit as to length is fixed by the statute.   In
defining a common carrier as 'one who pursues the business
constantly or continuously, for any period of time, or any
distance of transportation,' the code does not indicate any
length of road which the company must have in order to be
a common carrier.   Civil Code, § 2264.   It is possible that
a charter might not be granted to operate a railroad a few
feet in length, or for so short a distance that it would be
practically impossible of operation as a common carrier; or
if a charter should be granted, it is possible that the courts
might hold that such a venture was not a genuine railroad
within the meaning of the law, so as to condemn property.

But it cannot be said, as a matter of law, that merely because a commercial steam railroad will only be about three miles in length, it will be no railroad at all."

And, continuing at page 525, it said:

"But we cannot see how, as matter of law, it can be said that a company incorporated for the purpose of building and operating a railroad three miles in length for the carrying of goods and passengers can be said to be no railroad company at all because it selects the name of 'Terminal Company.'"

In *Riley v. Charleston Union Station Co.*, 71 S. C. 457, 51 S. E. 485, 110 Am. St. 578, the party seeking to condemn was incorporated for the purpose of constructing and maintaining a union passenger station in the city of Charleston, and to this end was given the right to acquire by purchase, lease, or condemnation all property necessary for the same. The court held that, if it was not in fact a railroad company, its main purposes were clearly within the objects of such a company, and so clearly analogous thereto as to warrant the court in applying to it the rules of law applicable to a regular railroad corporation in determining whether the property it sought to condemn was for a public purpose. In *State ex rel. Little v. Martin*, 51 Kan. 462, 33 Pac. 9, at page 476, speaking to this question, it is said:

"It [the road] may be long, or it may be short, at the option of the promoters, provided it is built in good faith for a public use, and within the contemplated purposes of the statute."

In *State ex rel. Trimble v. Superior Court*, 31 Wash. 445, 72 Pac. 89, 66 L. R. A. 897, it was held that the fact that the company seeking to appropriate the property did not own any cars or locomotives and had leased its line of road to other companies, did not deprive it of the right to take property under the power of eminent domain. See, also, *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.*, 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 198. As we have said,

our statute does not require that a projected line of railroad shall be of any prescribed length in order that the party projecting it may exercise the right of eminent domain. We apprehend that the true test is that the party seeking to condemn must be acting in good faith, and that the projected road shall serve a public purpose. Measured by this test, the relator is a railroad company within the meaning of the law. Its primary purpose is to connect the business enterprises of Ballard with the terminals of the Chicago, Milwaukee & Puget Sound Railroad Company in the city of Seattle proper, and to carry freight in carload lots between such points. It is not necessary that it should use its own rolling stock. If it provides the tracks, cars, and the motive power, and serves the public within the limits proposed, it will be doing a public business. Its good faith is evidenced, as we have pointed out, by the money it has already expended and the equipment which it has under contract.

We will next consider whether the property sought to be appropriated is now devoted to a public use. We have seen that it is occupied by the loading platform of the Bolcom Mills Company. This company is in possession of tract No. 1 under a written lease, upon a yearly rental of $25, and terminable upon ten days' notice. It holds tract No. 2 under a verbal license, rent free. The respondent's tracks are in Shilshole avenue, and it has never used any part of the property in question. These platforms are used in loading the cars of the respondent company and of the Northern Pacific Railway Company when switched onto the mill track, with the products of the Bolcom Mills. If the property was a part of the right of way, yards, or terminals of the respondent, or directly used by it in the discharge of its duties as a common carrier, strong evidence of necessity upon the part of the relator would be required. It could not be successfully contended that the right of eminent domain could be exercised by a railroad company to condemn land for the purpose of leasing to patrons for their personal convenience. The fact that

this strip of ground adds to the convenience of the mill com-
pany in loading its products upon the cars of respondent,
does not make its use a public one. A use will not be classified
as a public one merely because it may economize the handling
of the products of a patron of a common carrier. The ex-
emption from condemnation, if any, must rest upon the
ground that the public interest would suffer by an appro-
priation of the property for the use of the relator for track
purposes. If the property was owned by the mill company
and used as it now is, it would not be claimed that it was
serving a public use. The fact that it is owned by the rail-
way company and used by the mill company cannot change
a private use into a public one. It is the use to which the
property is applied and not the ownership, that marks such
use as public or private. The true test of whether the use
is public is well stated in *Farmers' Market Co. v. Philadelphia
etc. R. Co.*, 142 Pa. St. 580, 21 Atl. 902, 989, at page 587
where it is said:

"The true criterion by which to judge of the character of
the use is whether the public may enjoy it by right, or only
by permission. The test is, not what the corporation owning
the land may choose to do, but what under the law it must
do."

Speaking to this question, in *Diamond Jo Line Steamers
v. Davenport*, 114 Iowa 432, 87 N. W. 399, 54 L. R. A. 859,
at page 434, it is said:

"The mere use of the property for public purposes, is
then, not enough to give the exemption. Such property, it
seems, must be impressed with a trust in favor of the pub-
lic so that the latter's use is of right, and not of grace; and
this right must be one which cannot be defeated or destroyed
at the owner's will."

See, also, *In re New York etc. R. Co. v. Union Steamboat
Co.*, 99 N. Y. 12, 1 N. E. 27. Measured by the rule an-
nounced by the authorities from which we have quoted, it can-
not be said that the property is now devoted to a public use.

We next inquire whether the relator has shown a reasonable necessity for the appropriation of the property. The respondent urges that it has failed in this respect, for two reasons: (1) that it could condemn the property of the mill company immediately south of the property in controversy; (2) that an appropriation should not be allowed, because it will double the cost of loading the products of the Bolcom Mills on the respondent's cars, and thereby result in a loss of business to the respondent. These are largely questions of expediency, and can hardly be said to go to the question of the right to appropriate. It is fundamental that, when the property of A is sought to be taken for a public use, he cannot defend on the ground that it is just as feasible to appropriate the property of B. Moreover, if the relator's right of way should be located south of respondent's land, the expense of loading on the latter's cars from the Bolcom Mills would be further increased. From the facts heretofore stated, it will be seen that the respondent owns 194 feet of ground westerly from the property in controversy, upon which is located a loading platform extending southerly to the Bolcom Mills, over which the latter's products can be loaded on respondent's cars. So far as the convenience of loading onto the respondent's cars from the Bolcom Mills is concerned, the appropriation of the property in controversy will only result in lessening the length of platform for such purpose. We have seen that the loading platform and plant of the Bolcom Mills Company extends south from respondents' property to the water front. Upon all the facts in the record, the route adopted by the relator for its spur track is the most feasible, and a reasonable necessity exists for the appropriation. This is all the law requires. *State ex rel. Kent Lumber Co. v. Superior Court*, 46 Wash. 516, 90 Pac. 663; *North Coast R. Co. v. Northern Pac. R. Co.*, 48 Wash. 529, 94 Pac. 112; *State ex rel. Skamania Boom Co. v. Superior Court*, 47 Wash. 166, 91 Pac. 637.

It is finally urged that the proposed track will be only twelve feet from the mill track, measured from center to center, and that this does not afford a sufficient clearance. We think that the evidence shows that this is the usual clearance on spur tracks. The relator is equally interested with the respondent in having a sufficient clearance, and we are therefore inclined to adopt its view in this respect.

Other incidental questions are discussed in the briefs, which go to the advisability of the appropriation rather than to the broad public question which is necessarily controlling in cases of this character.

The judgment will be reversed, with directions to the trial court to proceed in conformity with this opinion and the prayer of the petition.

RUDKIN, C. J., FULLERTON, and CHADWICK, JJ., concur.

### ON REHEARING.

#### [*En Banc.* Decided October 5, 1909.]

PER CURIAM.—The respondent has filed a petition for a rehearing *en banc*, wherein it seeks to raise the question that the condemnation sought is for a private and not a public use. This question was not raised, either in the original briefs or in the oral argument, and was not considered by the court. The questions urged by the respondent were: (1) That the relator is not a railroad corporation within the meaning of the eminent domain statute; (2) that the property sought to be condemned was already devoted to a public use, and (3) that there was not a sufficient showing of necessity of appropriation. We cannot sanction the practice of permitting new questions to be raised in a petition for rehearing.

"It is the policy of the law to require parties to present all questions in the briefs originally filed, and not to permit new points to be made in the petition for a rehearing. The rule adopted pursuant to this policy is a salutary one, and one dictated by considerations of justice as well as of expediency. If parties were permitted to submit cases without pre-

senting all the material points a loose and slovenly practice would be encouraged, and the administration of justice would be delayed and embarrassed. To tolerate such a practice would impose the duty upon the courts of examining and deciding cases in detached parts, and thus delay decisions, produce confusion and encourage conduct not consistent with fair dealing and good morals." Elliott, App. Proc., § 557.

The petition will therefore be denied.