[No. 11466.   Department Two.   January 8, 1914.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant,* v. PIERCE COUNTY et al., *Respondents.*[1]

TAXATION—VALUATION—RAILROAD RIGHT OF WAY—EXCESSIVE ASSESSMENT—EVIDENCE—SUFFICIENCY. An assessment of a strip of land 100 feet wide and 21 miles long, acquired by a railroad company for a right of way, at an assessed valuation of $1,000 per acre within city limits, and $500 per acre outside the city, aggregating $137,980, is so excessive as to be constructively fraudulent, where it appears that the strip was without improvements and undistinguishable from adjacent lands, which in the city were valued at from $40 to $300 per acre, and outside the city, at from $5 to $165 per acre, which was the fair value; even if single ownership of the continuous strip enhanced its value; especially where the previous year the valuation was only one-fourth as much, and the state tax commission had placed a uniform valuation on rights of way similarly situated of $1,320 per mile; that a proper assessment would be $45,993; and no greater valuation should be permitted.

Appeal from a judgment of the superior court for Pierce county, Easterday, J., entered July 1, 1913, dismissing an action to recover a tax paid under protest, after a trial on the merits to the court. Reversed.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for appellant.

*Lorenzo Dow* and *W. W. Keyes,* for respondents.

[1]Reported in 137 Pac. 433.

FULLERTON, J.—In the years 1911 and 1912, the appellant, Northern Pacific Railway Company, owned a tract of land, approximately 100 feet in width and 21 miles in length, extending from a certain point in the city of Tacoma, called in the record the west portal of the Point Defiance tunnel, southerly, following near the shores of Puget Sound, to the boundary line between the counties of Pierce and Thurston. The land was procured by the railway company for railway purposes; it being intended for use as a part of its right of way for the relocation of its railroad between the city of Tacoma, in Pierce county, and the town of Tenino, in Thurston county, which the company contemplated making. The land lies wholly within the county of Pierce and, for approximately one-third of the way, within the boundary lines of the city of Tacoma. For the purposes of taxation for the year 1912, the assessor and board of equalization of the county of Pierce valued the land lying within the boundaries of the city of Tacoma at an average of $1,000 per acre, and that lying without such limits, at an average of $500 per acre. The land at that time contained no improvements whatever, but lay in a state of nature, and was undistinguishable from the abutting and adjacent lands, save only as it may have been marked off by stakes driven to mark its general course. On the assessment roll, the land was described as parts of the several tracts from which it was originally taken, and separately assessed as such, although, as we say, at a uniform rate per acre. The assessed valuation aggregated $137,980, on which a levy was made of $3,272.58.

The appellant railway company conceived that the property had been grossly overvalued, and, estimating that its actual value was not to exceed $31,360, and that a proper levy thereon would not exceed $737.21, tendered this sum in lieu of the assessment actually levied. The taxing officers refused to receive the amount tendered in satisfaction of the levy, whereupon the railway company paid the entire sum under protest, and thereupon instituted the present action to re-

cover back from the county the difference between the amount
of the tax it concedes to be due and the amount actually paid.
The lower court, after a trial, dismissed the action.   This ap-
peal followed.

If we are to consider the land in question as merely a part
and parcel of the general territory of which it forms a part,
the evidence discloses that it is palpably and grossly over-
valued by the assessor.   It was shown that, whereas, the
lands of the appellant in the city limits of the city of Tacoma
were valued at the rate of $1,000 per acre, the abutting and
adjoining lands, in many instances and tracts from which the
right of way was taken, were assessed at from $40 to $300
per acre, the average valuation being less than $150 per acre;
that, outside of the city limits, while the right of way was as-
sessed at an average valuation of $500, the adjoining and
abutting lands were assessed at from $5 to $165 per acre, the
average valuation being less than $40 per acre.   Since it
was shown that these adjoining and abutting lands were as-
sessed at their fair value, it requires no argument to demon-
strate that, if these several tracts of land forming this right
of way were still in the hands of the owners from whom the
appellant purchased them, they are grossly overvalued, so,
much so, indeed, as to require relief.

Is the land of greater value than the adjoining and abut-
ting lands because of its single ownership, or peculiar situ-
ation?   The respondent argues that it is.   It does not claim,
of course, that the land has any peculiar or any greater value
than the surrounding lands because it is owned by a railroad
company, or because it will be used for railroad purposes;
but it contends that it occupies the water front of Puget
Sound for the greater part of the way, and is the only feas-
ible and practicable means of approach, with proper grades
and curves, for a railroad into the city of Tacoma from the
south, and as such has a special and peculiar value not pos-
sessed by the adjoining and abutting lands.   It contends
further, also, that there is no evidence in the record that the

land when considered with reference to these particular features, is grossly or excessively overvalued.

But it seems to us that these contentions are not wholly justified by the record. The strip of land in question, it is true, follows the general contour of the shores of Puget Sound for its greater distance, but the plats introduced in evidence show that it is taken, for the greater part, from the uplands. The tracts left between the strip and the shore line are, in many instances, narrow, but they are of sufficient width for use, and no monopoly of the shore lands was acquired by the acquisition of the right of way. In this connection, it may be noticed, also, that the valuations placed upon the shore or tide lands by the assessor which were not taken by the railway company did not, in any instance to which our attention has been called, exceed one-third of the value placed on the lands of the railway company. As to this being the only feasible and practicable pass for a railway into Tacoma from the south, the only witness who was seemingly competent to give evidence on the question, a civil engineer, testified that another railroad could be built paralleling one built upon this tract of land at practically the same cost. Moreover, if the contention of the respondent that this was the only feasible route for a railway were true, the railway company first acquiring it could have no monopoly of its use. Under the act of the legislature of this state known as the Defile Act, any other railway company finding it necessary to build over the same route can compel the present owners to surrender to it a part of the right of way at all places where the necessities of the case required it. Laws 1890, p. 301; Rem. & Bal. Code, § 933 (P. C. 171 § 180c). *North Coast R. v. Northern Pac. R. Co.*, 48 Wash. 529, 94 Pac. 112.

Since, therefore, the tract, at the time the valuation was made, was in a state of nature, unimproved in any particular, and undistinguishable from the adjoining and surrounding lands to the ordinary observer, its only claim to an enhanced

value is that it formed a continuous strip in the hands of a single owner. But conceding that this gives it a value in excess of the surrounding lands the title to which is in the hands of a number of owners, we cannot think the added value anywhere near equals the added value the assessor chose to put upon it. Indeed, it appears to us that discrepancy is so gross as to amount to constructive fraud. Its actual assessable value is, however, not easily determinable from the record, but we think there was evidence from which a proper value could be ascertained. In addition to showing the excess of valuation over the abutting and surrounding lands, it was shown that the state tax commission, on lands coming within their jurisdiction situated similarly to these lands, that is to say, "All railroad grades, and rights of way, upon which the ties have not been laid," had placed a uniform valuation of $1,320 per mile, or 25 cents per lineal foot, and that the assessor of Thurston county had placed a value on this same right of way where it extended into Thurston county at this rate. It was shown, also, that the assessor of Pierce county for the year preceding the year of this assessment had placed a value thereon of about one-fourth of the present valuation, and that lands generally in this vicinity had rather decreased than increased in value during the interim. Taking these figures as a basis, we are satisfied that no assessment in excess of $45,993.34 should be permitted to stand.

The judgment of the court below is therefore reversed, with directions to allow a recovery of the taxes paid in excess of a tax based on an assessed valuation of $45,993.34.

CROW, C. J., MOUNT, MORRIS, and PARKER, JJ., concur.