JAMES D. TYLER & another *vs.* INHABITANTS OF HUDSON.

Worcester. October 3, 1888. — November 27, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Water Supply — Taking of Land on Great Pond — Land Damages —*
*Evidence — Reservation of Access.*

A town authorized by a special statute to take land on a great pond, and any water rights connected therewith, to create a storage reservoir, took a strip of land thereon, subject to certain rights of flowing which were also taken, as well as another strip outside of and adjoining the first, the fee of both strips being in the same littoral owner and parcel of a larger tract of his adjoining; and reserved to such littoral owner a right of access to the pond across the land taken. *Held,* at the trial of a petition to assess his damages for such taking, that evidence was admissible of the damage to the inner strip by the taking of the outer. *Held, also,* that the town could take a less estate than the fee, that the right reserved was appurtenant to all such owner's remaining land, and that the question whether it diminished the damage to such land should be submitted to the jury.

PETITION for the assessment of damages for land taken by the town of Hudson, under the St. of 1883, c. 149, on Gates Pond, a great pond in Berlin.

Trial in the Superior Court, before *Barker*, J., who, after a verdict for the petitioners, allowed a bill of exceptions, which, so far as material, appear in the opinion.

*J. T. Joslin*, for the defendant.

*F. P. Goulding*, for the petitioners.

W. ALLEN, J.   In the year 1867, one Sawyer, the owner of a tract of land containing about eighty acres, bounding on a great pond, called Gates Pond, granted to Francis Brigham, his heirs and assigns, "the right and privilege forever to flow and cover with water four acres and forty-eight rods of my land bordering on Gates Pond," reference being made to a plan for a more particular description of the land, "and the said Brigham has the right to raise the water in said pond to a bolt in a rock, situated on the northerly margin of that part of said land which has formerly been used as a meadow."   Brigham, who acquired rights to flow land all around the pond, and his devisees until the taking by the respondent town, maintained a dam and raised the waters of the pond; but whether so as to flow the whole of the four acres and forty-eight rods, or whether as high as the bolt in the rock, does not appear, nor does it appear whether water as high as the bolt would flow the whole of the land. The petitioners acquired the title of said Sawyer to the whole tract, subject to the right of flowing granted to Brigham.

The St. of 1883, c. 149, authorized the town of Hudson to "take, by purchase or otherwise, and hold the waters of Gates Pond, . . . and the waters which flow into and from the same, together with any water rights connected therewith, and also all lands, rights of way and easements, necessary for holding and preserving such water, and for conveying the same to any part of said town of Hudson," with authority to erect dams, etc. Under this authority, the town of Hudson took the waters of Gates Pond, and the waters which flow into and from the same, with any water rights connected therewith; "and also any and all lands, rights of flowage," etc. and also the rights and privileges which had been granted to Francis Brigham by sundry deeds named, among them the aforesaid deed of Sawyer; "also

the lands adjacent to said Gates Pond, and adjoining the same, (other than the premises described in the foregoing deeds,) owned by the parties hereinafter named, and of the area hereinafter specified as follows: . . . of land of J. D. and M. R. Tyler, two acres and ninety-seven and one half rods," which land adjoined the four acres and forty-eight rods above referred to, and lay between it and their remaining land. Land is thus taken of eight owners, and a plan is referred to. On the petition of James D. and M. R. Tyler, the damages occasioned by the taking of their land were assessed by the county commissioners, and subsequently this petition was filed in the Superior Court to have the damages assessed by a jury.

The first question is, whether the court erred in admitting evidence of damage to the four acres and forty-eight rods of land, which was subject to the easement granted to Brigham by the taking by the town. The petitioners owned the fee of the land, and had the right to any use of it not inconsistent with the easement as it was exercised. It was part of the whole tract owned by them, and it did not appear that they had not some beneficial use of it in connection with the residue of the land, and the court could not say, as matter of law, that cutting it off from the residue did not impair the value of the right which the petitioners had in it. The objection that the town took only the right which Brigham had in the land is inapplicable. That right was taken from Brigham's devisees, and not from the Tylers. The damage we have referred to is not the taking of that land, but that resulting from injury to it from the taking of their adjoining land. What the damage was does not appear; the objection was that any evidence to show damage was incompetent.

The other question arises from the reservation made by the town when the land was taken. We think the court erred in ruling that it was competent for the petitioners to introduce evidence to prove their damage, the same as if no reservation had been made, or attempted to be made, in reference to that portion of the petitioners' land not taken. So far as material to this discussion, the reservation is in these words: "In this taking, the reservation is expressly made to the eight landholders above named, their heirs and assigns, for their cattle

to come to said Gates Pond to drink, and to said owners, their heirs and assigns, to come to said pond to cut ice for domestic purposes, and to otherwise enjoy the use of said pond."

The circumstances under which this reservation was made can be briefly stated. In 1867 the pond was a great pond in its natural condition. Brigham, then having procured from all the littoral owners a right to flow their lands, built a dam, and raised the water of the pond above its natural level. This continued without any interference by the Commonwealth until the taking by the town in 1884. At that time, the town took land of all the littoral owners for the purpose of raising the water still higher, and of protecting the shores of the pond, and reserved to each a right of access to the pond over the land taken. We think that this was intended, and must be held, to be appurtenant to the remaining land. The part of the land of each owner which adjoined the pond was taken, and the right was reserved to " the eight landholders," and " to the said owners, their heirs and assigns," of access over the land taken to the pond. The access could be only from the part of the respective lands which was not taken, and the intention is manifest to reserve the right to the owners and landholders, not as persons or as owners of the land taken, but as owners of lands part of which was taken; and the right ought to be held as appurtenant to the whole land.

The right to take the land by purchase or otherwise does not involve the obligation to take the whole interest in land purchased or otherwise taken. That a right of way could be reserved in land taken by purchase will not be questioned; the objection to reserving a right in the owner in land taken *in invitum* is technical rather than substantial. It is true that, in a sense, it may be said to create a new estate in him without his assent. A technical answer might be, that, the estate being for his benefit, his consent and acceptance simultaneous with the taking will be presumed. The real answer is that the refinements and nomenclature of conveyancing will not be applied to a taking by right of eminent domain. No more land and no greater interest in it need be taken than the public use requires. If the right to make a particular use of the land is of benefit to the owner, and puts no new burden upon him, and does not

interfere with the public use for which the land is taken, there is no reason that he should be deprived of that use, and be paid its value as damages; all the right to use the land except that right may be taken, and that be left in him to enjoy or not as he pleases. If the right is of value, a valuable right in the land will remain in him, though he may refuse to exercise it.

We are of opinion that the whole estate in the land was not taken, but that a right in it appurtenant to the whole land of which it was parcel was left in the owners. Whether that right diminished the damage to the adjoining land should have been left to the jury. The raising of the water of the pond by Brigham did not destroy its identity as a great pond; the public still retained their rights in it. These rights in the littoral owners, and their right of access to the pond over the land taken, were recognized and preserved in the taking.

*Exceptions sustained.*