[No. 7761. Decided May 1, 1909.]

SPOKANE VALLEY LAND & WATER COMPANY, *Appellant*, v. ARTHUR D. JONES & COMPANY *et al.*, *Respondents.*[1]

JUDGMENT—RES JUDICATA—MATTERS THAT MIGHT HAVE BEEN LITIGATED. A judgment perpetually enjoining an irrigation company from lowering the waters of a lake, claimed by littoral owners by prior appropriation, is *res judicata* in a subsequent action by the irrigation company to condemn the right to use the waters, and concludes the company from asserting in the condemnation suit that the littoral owners had not appropriated the waters and that the same were open to appropriation by it by virtue of an act of Congress; since such question might have been litigated in the former action.

IRRIGATION—EMINENT DOMAIN—PROCEEDINGS—AMENDMENT LIMITING WATERS SOUGHT—APPEAL—ERRORS RESERVED. In condemnation by an irrigation company of the waters of a lake, affecting the right of littoral owners to water used by them for irrigation purposes, an offer of evidence of a proposed stipulation agreeing to permit the defendants to use sufficient water to irrigate their lands, is in substance an amendment of the petition limiting the water sought to be conveyed, and error, if any, in refusing the evidence is sufficiently reserved by exceptions, without formal offer to amend the petition.

SAME—PETITION—CERTAINTY AS TO WATER RIGHTS CONDEMNED. The rule that property sought to be condemned must be described with reasonable certainty, is sufficiently complied with where, in condemnation of littoral rights and waters in a lake for irrigation purposes, the petitioner exempted such water as was necessary to irrigate the lands of the littoral owners, and showed the number of acres of their irrigable land and that five-thousandths of a cubic foot per second of time per acre was sufficient; since that gave the court a definite basis for a decree, and that is certain which can be made certain.

[1]Reported in 101 Pac. 515.

SAME—RIGHT TO CONDEMN WATERS—JOINT USER. Bal. Code, § 4156, providing that the rights of riparian owners to water needed for irrigation cannot be condemned, establishes the policy of this state for a joint user in many instances of waters sought to be condemned for irrigation purposes.

SAME—PETITION—LIMITING WATERS SOUGHT—PAYMENT OF COMPENSATION OTHER THAN MONEY. In condemnation of waters of a lake for irrigation purposes, part of which are already used by littoral owners for irrigating their lands, an offer of the petitioner to exempt sufficient water to irrigate the lands of the littoral owners is not an attempt to pay damages in compensation other than money, in contravention of Const., art. 1, § 16, in view of the statute prohibiting the condemnation of waters needed for irrigation.

Appeal by plaintiff from a judgment of the superior court for Spokane county, Poindexter, J., entered June 22, 1908, adjudging a public use, and awarding damages to defendants, in an action to condemn a way for a ditch and the riparian rights to the waters of a nonnavigable arm of a lake. Reversed.

*Allen & Allen,* for appellant.
*Gallagher & Thayer,* for respondents.

Gose, J.—The appellant, a public carrier of water, was the plaintiff below. Liberty Lake is a body of water limited in area, and is navigable for small craft. The respondents are the owners of section 15, in township 25, north, range 45 E., W. M. An unnavigable arm of said lake, sometimes called "Loomis Lake," dry at its intake in low water, extends for some distance into such land. Some time prior to the commencement of this action, the appellant and its predecessors in interest constructed a dam across the arm of Liberty Lake at a point near the lake, and also constructed a canal and laterals for the purpose of impounding and carrying the water from such lake to semi-arid, nonriparian land and distributing the same to consumers to be used for irrigation purposes. It has since maintained such dam, canal, and laterals and diverted and distributed such water as a public carrier. The main canal is constructed through what was formerly

the bed of the arm of Liberty Lake, to a point near the west line of such section, from whence it continues in a northwesterly direction, passing off such section at a point on the west line of the northwest quarter thereof. The appellant asserts ownership by appropriation of the water of such lake. This suit was instituted for the purpose of condemning a strip of land seventy-five feet in width, being thirty-seven and one-half feet in width on each side of the center of such canal as the same is located and constructed over and across such section, and to condemn whatever littoral or riparian rights the respondents own, and to determine the compensation to be made to the respondents for the taking of such right of way and the withdrawal of the water from the arm of the lake. The construction of such dam has resulted in the withdrawal of all the water from the bed of the arm of the lake. The respondents' land does not touch Liberty Lake proper. The trial court found that the appellant had a right to condemn such strip of land for canal purposes; that as a public carrier it could condemn respondents' riparian rights; fixed the damage to the respondents at $24,000; and entered a decree accordingly. The appeal is prosecuted from such decree.

At the threshold of the case the appellant contends that, under the act of March 3, 1877, U. S. Com. Stats. 1901, p. 1549, the water was public and open to appropriation at the time it constructed its canal and diverted the water from the arm of the lake; that the respondents had not then and have not since appropriated any of such water under such act, and that they have no littoral or riparian rights to condemn. This case was before this court on the question of the construction of Bal. Code, § 4156 (P. C. § 5871); *State ex rel. Liberty Lake Irr. Co., v. Superior Court,* 47 Wash. 310, 91 Pac. 968. The appellant is foreclosed from raising this question. Before the commencement of this suit, Jones & Company, who was then the owner of section 15, commenced an action against the appellant in the superior court of Spo-

kane county for the purpose of enjoining it from maintaining its dam and from interfering with the natural state of the water of Liberty Lake. In that suit a final decree was entered against the appellant, from which we excerpt the following:

"It is hereby ordered, adjudged and decreed that said defendant be and it is hereby perpetually enjoined from maintaining, using or operating the dam and head gates heretofore erected in Liberty Lake, . . . or any other obstruction to the natural flow of the waters in said lake, and from preventing the waters of Liberty Lake from reaching the plaintiff's premises, . . . as they were wont to do in their natural condition when not obstructed or interfered with, and said defendant is further enjoined from interfering with or affecting in any way whatsoever the natural level of the waters of said lake and from using or drawing off the waters thereof for any purpose. And it is ordered to forthwith remove the aforesaid dam and head gates."

The decree then provided that its enforcement should be held in abeyance, provided the appellant should prosecute condemnation proceedings with due diligence and pay such judgment as should be entered therein within thirty days after the judgment, unless an appeal therefrom should be taken. The appellant prosecuted an appeal from such judgment, and its appeal was dismissed in this court. *Jones & Co. v. Spokane Valley Land & Water Co.*, 44 Wash. 146, 87 Pac. 65. Such injunction is therefore now in force. In *Spokane Valley Land & Water Co. v. Madson*, 46 Wash. 640, 91 Pac. 1, this appellant sought to raise this question. At page 641, the court said:

"Appellant sustains its contention by an elaborate and able argument which would appeal with much force to the writer of this opinion were the question properly before the court at this time. But, in view of the former adjudication between these same parties relative to the same subject-matter, we are constrained to hold that this question is not now before us. It could have been (but was not) presented when the case was here before. The decision announced at that

time must, for the purposes of the present hearing, be deemed binding as between the parties."

See, also, 24 Am. & Eng. Ency. Law (2d ed.), pp. 713-14.

It is fundamental that it was the duty of the appellant, in the suit wherein the injunctional decree was entered, to assert and establish all the rights which it had or claimed to have in the subject-matter of the action. Failing to do so, it cannot now be heard in a separate suit to claim any rights inconsistent with such judgment.

The respondents earnestly urge that there are no other errors sufficiently assigned. As to the questions hereafter considered, we think this contention is without substantial merit. During the trial of the case the court admitted in evidence an offer or stipulation of the appellant in the following language:

"The plaintiff hereby stipulates and agrees that there shall be excepted from these proceedings and from the order of appropriation to be entered herein so much of the water of Liberty Lake as shall be necessary to irrigate the defendant's land, to wit: Section fifteen (15), township twenty-five (25) north, range forty-five (45) E. W. M., said water to be taken from the canal of plaintiff in said section 15 at such place or places as the defendants may select and in such amounts and at such times as the same may be needed for irrigating said land and that the court shall in the order of appropriation herein determine and fix the amount of water needed for such irrigation and fix the time or times of use thereof, and that the right-of-way sought to be condemned herein shall be subject to the right of the defendants to enter upon said right-of-way for the purposes of putting in and installing and maintaining the necessary pumping plant or other apparatus necessary to obtain said water from said plaintiff's canal for such irrigation. This agreement and stipulation and the rights so to be excepted and reserved to defendants to run with the land and to pass with the land to the grantees of the defendants of said section fifteen."

The respondents urge (1) that no error is assigned on this stipulation. This we have seen is without merit. (2) That the offer is in the nature of an abandonment of a part of the

water, and that there can be no abandonment without a surrender of possession.   This objection will be considered in connection with the respondents' objection No. 4.   (3) The offer is unavailing, except by an amendment of the petition. (4) The offer is an effort to reduce the damages by tendering to respondents something in lieu of money, in contravention of art. 1, § 16, of the constitution.   (5) That the description of the property sought to be reserved to the respondents is vague and indefinite.   (6) That the effect of the offer, if carried into the decree, would be to create a joint control of the water which public policy forbids.   In considering these questions we will first treat objections 3, 5, and 6, in their proper order.

(3)   We have observed that the offer was admitted in evidence.   We think that it was in substance and effect an amendment of the petition whereby the appellant limited the water it sought to condemn to the quantity in the lake in excess of the needs of the respondents for irrigating their land in section 15.   Their rights for domestic uses were protected in another offer to which the respondents had given their assent.   This view is supported by the case of *Dunlap v. Rauch*, 24 Wash. 620, 64 Pac. 807.   In the *Dunlap* case a judgment creditor of an insolvent corporation, after the issuance of an execution and a return of *nulla bona*, brought suit against the stockholders to recover a judgment for their unpaid subscription.   Pending the action a receiver was appointed for the insolvent corporation, which fact was shown by a supplemental answer.   At the conclusion of the testimony and after the jury impaneled to try the case had failed to agree, and after the parties had submitted the case to the court for its decision on questions of both fact and law, the plaintiff filed a written offer whereby she consented that the receiver should be substituted as plaintiff, or that she would assign to the receiver any judgment that should be entered in her favor, or that the court should provide that any judgment that should be entered in her favor should be for the

benefit of all the creditors of the corporation, and that any money collected on the judgment should be distributed *pro rata* to all the creditors.    At page 625 the court said:

"We deem it of no consequence that the court did not direct amendments of the pleadings or a formal substitution of the receiver."

But the result will not be changed whether it be treated as an amendment, as an offer to amend, or as evidence.    Under our liberal rule of pleadings, a party is ordinarily entitled to amend a pleading at any time before judgment.    The action of the court during the trial and its finding that the respondents refused to accept the offer, conclusively show that the court was controlled by the view that the acceptance of the offer was optional with the respondents.    The appellant reserved exceptions, and clearly stated its view, in objections which it interposed during the trial of the case.    The error, if any, is therefore sufficiently reserved.    *LaRault v. Palmer,* 51 Wash. 664, 99 Pac. 1036.

(5)    The true rule is that the property sought to be condemned must be described with reasonable certainty.    "That is certain which can be made certain by means of the description or references contained in the petition."    2 Lewis, Eminent Domain (2d ed.), par. 350.
See, also, *State ex rel. Liberty Lake Irr. Co. v. Superior Court,* 47 Wash. 310, 91 Pac. 968.

In this case, at page 315, the court, speaking to the instant case, say:

"The order of appropriation shall except from its operation a sufficient amount of water to meet the present needs of relators and the needs that will accrue within a reasonable period of the immediate future; so far as the court can determine by the preparations made, and from all the facts and circumstances shown, and the expressed intentions and purposes of relators, and the evident good faith relative to promptly placing said lands under irrigation."

Indeed, Bal. Code, § 4156 (P. C. § 5871), provides for contingencies of this character in that the riparian rights of

a party cannot be condemned as to water "that is needed" by
him for irrigation.   The language quoted from the *Liberty
Lake* case was spoken in relation to the construction of this
statute.   The appellant offered evidence tending to show
that five-thousandths of a cubic foot of water per second
of time per acre was sufficient to irrigate respondents' land.
The evidence showed the number of acres of land that was
irrigable.   This gave the court a definite basis for a finding
and a decree.

(6)   The respondents cite *Dillon v. Kansas City etc. R.
Co.*, 67 Kan. 687, 74 Pac. 251, in support of this objection.
In that case the court say:

"It is highly important to the general traveling public, as
well as to business interests that such corporation have ex-
clusive possession and uninterrupted control of all property,
the use of which is necessary in the discharge of this service."

The courts have not been troubled in deciding such ques-
tions in water cases.   *Nesalhous v. Walker*, 45 Wash. 621,
88 Pac. 1032..   As we have seen, Bal. Code, § 4156, *supra*,
contemplates a joint user in many instances where riparian
rights are sought to be taken by condemnation.   The statute
establishes the public policy of this state touching such ques-
tions.

(2) (4)   We next come to the principal question, whether
the effect of this offer is to give the respondents some right or
easement as compensation rather than money, in contraven-
tion of art. 1, § 16, of the constitution.   Is it not rather an
effort on the part of the appellant to appropriate a part of
the water of Liberty Lake, reserving to the respondents so
much thereof as shall be found necessary for the irrigation
of their land, such quantity to be made definite by the court
after hearing the evidence?   In some of the cases cited by
the respondents to sustain this contention, the party desiring
to condemn sought to reduce the damages to the landowner by
a tender of a right or easement in something apart from the
property sought to be condemned.   The appellant, in making

this offer, brought itself within the principle announced in *Oregon R. & Nav. Co. v. Owsley*, 3 Wash. Ter. 38, 13 Pac. 186; *Tyler v. Hudson*, 147 Mass. 609, 18 N. E. 582, and *St. Louis etc. R. Co. v. Clark*, 121 Mo. 169, 195, 25 S. W. 192, 906, 26 L. R. A. 751. In the *Owsley* case, at page 46, it is said:

"In course of the trial it appeared in evidence for plaintiff that certain irrigating ditches, crossing the right of way, were interfered with and obstructed by the construction of the railroad. There was also evidence tending to show that at the time of commencement of the appropriation proceeding the construction was not complete. Thereupon the defendant offered to prove by testimony of its constructive engineer that according to the plans for construction the irrigating ditches were to be placed by the company in the same condition as before construction, and were to be maintained in that condition afterwards by the defendant at its own expense. Defendant also offered to show by the same witness what would be the expense of replacing the ditches interfered with, and of putting them again in the same condition as they were before the beginning of the construction, and that he was instructed by defendant during and as part of the construction to replace the ditches at defendant's cost, and put them in the same condition as found. All these offers were overruled by the trial judge, and exceptions to his rulings were duly taken and allowed."

And continuing, at page 49, the court say:

"We see no reason why any corporation seeking appropriation of a right of way should not be held entitled to the benefit of all the ingenuity and economy it may have at command in the planning and construction of its works, not only with reference to outlay for material and labor, but also with reference to compensatory damages to property owners along its right of way. If it sees fit to leave unappropriated so much of the landowner's interest as consists in an easement for irrigating ditches across the right of way, there is no rule of law of which we are aware to prevent it doing so. It surely cannot be sound law that the corporation must take everything or nothing. Rather, it is bound to use its right of appropriation so as not to destroy or interfere with or

·debar any rights which may reasonably stand without prejudice to its own legitimate operations."

At page 51 the court, continuing, said:

"If, according to the plan of construction of the defendant's railroad—actual, and not mere paper plan,—plaintiff was to have or did have water passage from one side of the road to the other for purposes of irrigation, then he had a substantial right to such passage and could enforce it against the railroad company. It follows that no just estimate of his damages could be arrived at without taking that right into account as a substantial and permanent right qualifying the amount he ought to recover."

In *Tyler v. Hudson, supra,* at page 611, certain property was sought to be condemned subject to the following reservation:

"In this taking, the reservation is expressly made to the eight land-holders above named, their heirs and assigns, for their cattle to come to said Gates pond to drink, and to said owners, their heirs and assigns, to come to said pond to cut ice for domestic purposes, and to otherwise enjoy the use of ·said pond."

Speaking to the effect of this reservation, at pages 612, 613, it is said:

"The right to take the land by purchase or otherwise does not involve the obligation to take the whole interest in land purchased or otherwise taken. That a right of way could be reserved in land taken by purchase will not be questioned; the objection to reserving a right in the owner in land taken *in invitum* is technical rather than substantial. It is true that, in a sense, it may be said to create a new estate in him without his assent. A technical answer might be, that, the estate being for his benefit, his consent and acceptance simultaneous with the taking will be presumed. The real answer is that the refinements and nomenclature of conveyancing will not be applied to a taking by right of eminent domain. No more land and no greater interest in it need be taken than the public use requires. If the right to make a particular use of the land is of benefit to the owner, and puts no new burden upon him, and does not interfere with the public use for which

the land is taken, there is no reason that he should be deprived of that use, and be paid its value as damages; all the right to use the land except that right may be taken, and that be left in him to enjoy or not as he pleases. If the right is of value, a valuable right in the land will remain in him, though he may refuse to exercise it. We are of the opinion that the whole estate in the land was not taken, but that a right in it appurtenant to the whole land of which it was parcel was left in the owners. Whether that right diminished the damage to the adjoining land should have been left to the jury. The raising of the water of the pond by Brigham did not destroy its identity as a great pond; the public still retained their rights in it. These rights in the littoral owners, and their right of access to the pond over the land taken, were recognized and preserved in the taking."

In *St. Louis etc. R. Co. v. Clark, supra*, at page 189, the property was sought to be condemned subject to the following reservation:

"That said company will construct and maintain for the use of said defendant Clark, his heirs and assigns, across the tracks of its railroad within the land of said defendant Clark, two crossings, which shall be located at such places as said defendant shall select."

At page 190, the court said:

"The question is then presented whether the company in condemning a right of way may reserve to the landowner, without his consent, one or more open crossings and have the damages assessed on the basis that the landowner has and retains such an easement."

And, continuing, at page 194, the court say:

"The company had the undoubted right to elect, as it did, to take a strip fifty, instead of one hundred, feet in width, and if it sees fit to reserve two open crossings for the defendant's use, we can see no reason why the reservation may not be made, and the damages then assessed on the basis that the defendant retains that interest in the land. The statute very justly and properly places restrictions upon the exercise of the right of eminent domain, but it does not follow by

any correct reasoning that the condemning company is bound in all cases to go to the full extent of the law. We are aware there are cases which seem to hold that to allow the company to reserve a right to the owner of the land, when he does not ask it, is to pay him for the land taken in something other than money; but it must be evident that such reasoning is not sound. The reservation of the easement being made, the damages are assessed in view of the interest thus retained and not condemned. The company pays for what it needs and takes, and the landowner is allowed all the damages which he in fact sustains."

See, also, *State ex rel. Kent Lumber Co. v. Superior Court,* 46 Wash. 516, 90 Pac. 663; 15 Cyc. 717, 718.

We are in full accord with the views expressed by these courts. The difference in condition between the reservations in these cases and the instant case is more fanciful than substantial. It is one of degree only. It is fundamental that the condemning party cannot take more than his reasonable necessities require. He can condemn less if he chooses to do so. In legal effect, the appellant is seeking to acquire a part of the riparian rights of the respondents and they are insisting that it shall be required to take all of such rights, whilst, on the former appeal, they contended that it could not take any part of such water. We have seen that the effect of the dam is to take all the water out of the bed of the arm of the lake and place it in the canal which follows the bed of the lake to a point near the west line of the respondents' land. In this way the loss of the water by seepage is materially reduced, and the water economized for a beneficial public purpose. As pointed out in the Missouri case, there are cases which hold that this results in paying the landowner something other than money, but we agree with that court that such view is not sound. The court should first determine and fix the quantity of water reasonably necessary for the irrigation of the respondents' land in section 15, in the manner and form stated in the stipulation, not for two or three years, but as a perpetual right, to run with the respondents'

land as stated in the offer.   The quantity of water being fixed, the damages should then be assessed in view of the interests thus retained and not condemned.   In this way the appellant will pay for what it takes, and the landowner will be allowed all the damages which he in fact sustains.

We have not overlooked the orders heretofore made by the several trial judges since the case was here on the former appeal.   We do not think that such orders militate against the view herein announced.   Other minor questions have been pressed in the briefs of the respective parties which we do not regard as material in view of the conclusion we have reached.

The case will be reversed, with directions to the trial court to permit the appellant to amend its petition so as to incorporate its offer, if it so desires.   Otherwise it will be treated as amended in that respect.   In view of the fact that the court may have been misled by some of the contentions and remarks of the appellant's counsel, costs on appeal will not be allowed to either party.

FULLERTON, CHADWICK, DUNBAR, and MOUNT, JJ., concur.