[No. 10696.· Department One.    October 16, 1912.]

THE STATE OF WASHINGTON, *on the Relation of Union Lumber Company, Plaintiff*, v. THE SUPERIOR COURT FOR THURSTON COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—RAILROAD CROSSINGS—RESTRICTED USE—ADJUDICATION OF NECESSITY. Upon condemnation of a railroad crossing under Rem. & Bal. Code, § 5736, the court may, in view of the settled rule that the right can be limited and exercised in a stipulated manner, adjudge the public use subject to defendant's right to use a logging road and upon condition that the petitioner shall construct and keep in repair an overhead crossing for the logging road (PARKER, J., dissenting).

SAME—RAILROAD CROSSING—LIMITED USE—COMPENSATION—RESTRICTIONS. In condemning a railroad crossing on condition that the petitioner construct and keep in repair an overhead crossing for defendant's logging road, the court may limit the damages to the right condemned and the manner in which it is sought to be exercised.

SAME—LIMITED USE—ADJUDICATION OF NECESSITY—FORM—SPECIFICATIONS FOR OVERHEAD CROSSING. An adjudication of public use and necessity for condemning a railroad crossing, on condition that the petitioner construct and maintain an overhead crossing for the defendant's logging road, is not objectionable in that it is not accompanied by specifications for the construction of a trestle and grade, since that can be left to the trial and the determination of damages to be paid under a particular and designated use, to be shown by plats and appropriate specifications.

SAME—PUBLIC NECESSITY—OBJECTIONS—NECESSITY OF ACQUIRING OTHER LANDS. An adjudication of a public use and necessity for condemning a railroad crossing is not objectionable in that the petitioner must acquire other lands in order to carry out the scheme for an overhead crossing.

Certiorari to review a judgment of the superior court for Thurston county, Easterday, J., entered August 19, 1912, adjudging a public use and necessity, in proceedings to condemn land for railway purposes.    Affirmed.

¹Reported in 127 Pac. 109.

*Thomas M. Vance*, for relator.

*Geo. T. Reid, J. W. Quick*, and *L. B. da Ponte*, for respondents.

Morris, J.—Relator operates a logging railway in connection with its mill, which crosses the right of way located by the respondent railway company, upon which it proposes to construct its new four-track line of road, known as the "water line," and to that end proposes to condemn relator's right of way at the point of intersection. The respondent, after setting forth in its petition the description of the land it seeks to appropriate, the grades of the two lines of railway, the configuration of the ground at and near the intersecting point, and the situation as to grade, overhead and underhead crossings with relation to operative conditions and matters of public safety, recites:

"That there exists a reasonable necessity for the condemnation of the right to cross said lands at grade, and that the tracks and logging road of respondent be elevated upon a trestle and fill over the tracks of petitioner's proposed line. Petitioner proposes to elevate said tracks, at its own expense and under a plan whereby the grades on said overhead crossing will be identical with the grades now existing in said logging road, and without any damage or inconvenience to respondent whatever; that it is entirely practicable so to elevate said logging railroad over petitioner's proposed line of road, and the same can be done without interfering with the continuous operation of the said line, and when done said logging railroad will be in every respect as safe and convenient to operate as at the present time and no injury whatever will thereby result to respondent. . . . and said public interests and necessities imperatively require the construction of petitioner's line at grade and the elevation of respondent's said railroad as proposed."

In due time the matter was brought on for hearing, for the purpose of obtaining a decree of public use and appropriation, and the court, after hearing evidence upon the matters set

forth in the petition, granted such decree, containing, among other things, this provision:

"It is further ordered and decreed that petitioner's said appropriation of said land is upon condition and subject to the obligation by petitioner to construct and maintain at its own cost and expense, so long as the same shall be used by respondent, an overhead crossing on a fill and trestle for the use by respondent in the operation of its certain logging railroad mentioned in said petition, and the appropriation by petitioner of said premises and of respondent's interests therein is subject to the right of respondent to operate its said logging railroad as long as it shall see fit to do so, over and across said premises on said fill trestle to be constructed and maintained by petitioner for respondent's use as aforesaid in the operation of its logging railroad."

Relator took exceptions to the entry of this decree and to the evidence upon which the quoted provision is based, and now presents its exceptions under a writ of certiorari, asking that they be sustained and the decree vacated.

The main suggestion of error is lack of power in the court to provide for an overhead crossing, and the fact that, while relator's right of way is only fifty feet wide, to provide for the proposed fill will require a base of seventy feet, necessitating the acquirement by petitioner of an additional ten feet on each side of relator's right of way, which is not sought in this proceeding, and which if acquired by petitioner, must be by purchase, or in some new and independent proceedings. Objection is also made to the fact that the decree is not accompanied by plat, design, or specifications showing the exact character of this proposed fill.

The first objection is the most serious one. We have concluded, however, to overrule it. Petitioner has the undoubted right to condemn a crossing of relator's road under Rem. & Bal. Code, § 8736. The right to condemn this crossing carries with it the right to condemn a particular crossing, and have it determined that such particular crossing is a public use, and that necessary lands may be appropriated therefor.

The law is well settled in this state that, where the right of
eminent domain is given, that right may be exercised in a
stipulated manner, and that the court may in its decree pro-
vide for a limited use, or a particular use, which shall recog-
nize the rights of both parties in the use of the land appro-
priated; and that the jury, in determining the compensation
to be paid, shall do so with reference to the particular use to
which the lands are to be put and the particular method
sought to be adopted in the taking and use of the lands
sought to be appropriated.   These and like rules have been
laid down in, *Seattle & M. R. Co. v. Roeder,* 30 Wash. 244,
70 Pac. 498, 94 Am. St. 864; *State ex rel. Kent Lumber Co.
v. Superior Court,* 46 Wash. 516, 90 Pac. 663; *Spokane Val-
ley Land & Water Co. v. Jones & Co.,* 53 Wash. 37, 101 Pac.
515; *Olympia Light & Power Co. v. Harris,* 58 Wash. 410,
108 Pac. 940.   If then, a particular use or right may be con-
demned, we can see no objection to the decree of appropria-
tion definitely determining and adjudicating the particular
use to which the lands are to be put and the particular man-
ner in which the right sought is to be exercised.   This has
ordinarily been done by stipulation, or some appropriate
method employed at the time of the trial to ascertain the dam-
ages.   If it is proper to then determine it and to have the
court limit the inquiry to some special use, then it is proper
for the court in the first instance to determine whether the
use sought is a public use, and, as such, may be condemned
and to limit the ascertainment of damages to the right con-
demned and the manner in which it is is sought to be exer-
cised.

That no specifications accompany the decree is no objec-
tion.   The decree determines only the legal right; it does not
attempt to indicate the facts to be determined before that
right can be exercised.   That inquiry and ascertainment may
be left to the trial, and the jury can there determine the dam-
ages to be paid under a particular and designated use, to be
shown by plats, designs, or other appropriate specifications,

which become part of the record, and may be appropriately referred to in the final decree or judgment.   That other lands not involved in this proceeding are necessary to respondent for use in its proposed fill is immaterial to relator, since it rests with respondent to acquire these lands in order to carry out its scheme.   If it fails to do so, relator will not suffer, as it will then retain the full use of its lands as before.   If respondent is successful in acquiring these necessary lands, relator has been awarded damages under the theory that they would be so acquired and used, and it has no complaint.

These considerations lead us to sustain the rulings complained of, and the decree is sustained.

MOUNT, C. J., CROW, and CHADWICK, JJ., concur.

PARKER, J. (dissenting)—If the railway company proposed to condemn the right of the Union Lumber Company to maintain its logging road at the present grade where the railway company is proposing to fix the grade of its tracks, reserving to the lumber company the right to maintain an overhead crossing of sufficient height not to interfere with the operation · of the railway, I would have no trouble in agreeing with the majority opinion, under the rule announced in *Spokane Valley Land & Water Co. v. Jones & Co.*, 53 Wash. 37, 101 Pac. 515. But since the decree of the superior court provides for something more than this reservation of right in the lumber company, by imposing upon the railway company the duty to construct and maintain for the lumber company's use the proposed overhead crossing and approaches thereto for some considerable distance on either side of the railway and beyond its right of way, it seems to me that the lumber company is being required to submit to the taking of its property by eminent domain proceedings without "just compensation having been first made or paid into court" for it, as provided by § 16, art. 1, of the state constitution.   The obligation which is here sought to be put upon and assumed by the railway company, to maintain for the use of the lumber company

the overhead crossing and approaches thereto, I am of the opinion is not such payment to the lumber company for the taking and damaging of its property as is contemplated by the constitution. The lumber company is not thereby receiving full compensation at the time of the taking and damaging of its property; but of necessity it must depend upon the railway company maintaining overhead crossings and approaches thereto in the future. Instead of receiving full compensation before its property is taken, the lumber company is being compelled to accept the obligation of the railway company to maintain the overhead crossing and approaches thereto in the future, in lieu of a part of the compensation which the constitution guarantees shall be paid before the taking. This is not a mere reservation of a right in the lumber company, but is also an obligation calling for a continuing future service to be rendered by the railway company to the lumber company, which I think is not different in principle from what it would be were it a money obligation to be paid in the future after the taking. I therefore dissent.