[No. 12127. Department One. December 30, 1914.]

THE CITY OF SEATTLE, *Respondent*, v. SEATTLE, RENTON & SOUTHERN RAILWAY COMPANY *et al.*, *Appellants*.[1]

EMINENT DOMAIN—PROCEEDINGS—NECESSARY PARTIES DEFENDANT. In proceedings by a city to condemn the property of a railroad company, which was in the hands of receivers, the receivers are necessary parties defendant.

SAME—PROCEEDINGS—LIMITATION OF USE — ISSUES AND PROOF— DAMAGES—DECREE. In proceedings by a city to condemn part of the right of way of a railroad company in order to secure a joint use, in which verdicts for damages were awarded for such joint use only, judgment cannot be entered granting to the city the fee of the property condemned.

SAME — ASSESSING DAMAGES — SEPARATE TRIALS AS TO SEPARATE TRACTS. In proceedings by a city to condemn part of the right of way of a railroad company for a distance of several miles, but of varying widths, described by metes and bounds by various descriptions, dividing the property into various zones, the city is not entitled to try out the issue of damages on each description or zone, and have various verdicts rendered thereon, but the damages must be determined as a whole, and not by piecemeal; and· it is immaterial that as to some of the zones it is claimed that the city's rights are determined by deeds, franchises, and prior litigation; since the questions of such rights and title are not to be submitted to the jury.

SAME—DAMAGES—MEASURE OF DAMAGES. Upon the condemnation of railway property, in determining the damages because of a five per cent grade adjacent to its terminal and shops, the measure of damages is such sum as would enable the railway company to readjust itself to the new grade, so that it would occupy the same relative position to the proposed grade as it does to the present grade; and not the amount necessary to readjust the tracks into the shops on a five per cent grade, the cost of retaining walls, and estimated insurance against added risks of operation on a five per cent grade.

Appeal from a judgment of the superior court for King county, Humphries, J., entered January 27, 1914, upon the verdict of a jury rendered in favor of the defendant, in proceedings to condemn lands for street purposes. Reversed.

[1]Reported in 145 Pac. 54; 1167.

*Scott Calhoun,* for appellants.

*James E. Bradford* and *Howard M. Findley,* for respondent.

MORRIS, J.—Action by the city of Seattle, seeking condemnation of adjacent property for the purpose of widening Rainier avenue. Included in the property affected, was the right of way of the railway company, varying in width from sixteen to thirty-three feet throughout the entire distance of about eight miles, and tract 30, Morningside addition, upon which the railway company had erected its shops and car barns. The railway company has appealed, alleging numerous errors.

First, it is contended that, under the authority of *State ex rel. Peabody v. Superior Court,* 77 Wash. 593, 138 Pac. 277, the receivers of the railway company should have been made parties. This contention must be sustained. The city suggests that, because of a different showing as to certain dates relative to the action of the Federal and state courts in the appointment and discharge of receivers, the *Peabody* case is not controlling. It seems to us, however, that the same reasoning is present here as in that case, and that no valid decree could be made without the presence of the receivers.

The condemnation ordinance referred to the property of the railway company to be taken or damaged, as all right, title, and interest in and to any lands lying within the limits of Rainier avenue, belonging to the Seattle, Renton & Southern Railway Company. The petition adopted the same language, describing the right of way with its varying widths by metes and bounds, and embracing a number of different descriptions, some of which would describe but a small portion of the right of way, while others would describe long distances. The city was permitted by the lower court to try each one of these descriptions separately, upon the theory that the city was not condemning the whole title or interest

of the railway company, but only the right to make a joint use for street purposes, which would not interfere with the use of the railway company. The jury in each instance assessed the damages to be awarded for such joint use at the sum of ten dollars, irrespective of either the length or width of the right of way embraced in that particular description. Judgment was entered upon these various verdicts, the language of which under Rem. & Bal. Code, § 7784 (P. C. 171 § 63), would vest the title to these various descriptions in the city in fee.

There is nothing equitable in ascertaining the damages to be awarded upon the theory of a joint use, and then entering a decree that grants the entire use. Such procedure cannot be sustained. As was said in *State ex rel. Union Lumber Co. v. Superior Court*, 70 Wash. 540, 127 Pac. 109:

"The law is well settled in this state that, where the right of eminent domain is given, that right may be exercised in a stipulated manner, and that the court may in its decree provide for a limited use, or a particular use, which shall recognize the rights of both parties in the use of the land appropriated; and that the jury, in determining the compensation to be paid, shall do so with reference to the particular use to which the lands are to be put and the particular method sought to be adopted in the taking and use of the lands sought to be appropriated. These and like rules have been laid down in, *Seattle & M. R. Co. v. Roeder*, 30 Wash. 244, 70 Pac. 498, 94 Am. St. 864; *State ex rel. Kent Lumber Co. v. Superior Court*, 46 Wash. 516, 90 Pac. 663; *Spokane Valley Land & Water Co. v. Jones & Co.*, 53 Wash. 37, 101 Pac. 515; *Olympia Light & Power Co. v. Harris*, 58 Wash. 410, 108 Pac. 940. If then, a particular use or right may be condemned, we can see no objection to the decree of appropriation definitely determining and adjudicating the particular use to which the lands are to be put and the particular manner in which the right sought is to be exercised. This has ordinarily been done by stipulation, or some appropriate method employed at the time of the trial to ascertain the damages."

If the city, therefore, seeks to take less than the whole, then its purpose should in some way be clearly indicated, so that the judgment of condemnation will be a final and absolute determination of the rights of the parties, and these rights should be ascertained as a whole and not piecemeal. If it is the purpose of the city to obtain a joint use of the railway property for city purposes, the damages, if any, should be determined from such joint use of the whole right of way, and not by dividing such right of way into zones and determining each separately as if it were the only use to be determined. The vice of such a procedure is shown in the several verdicts returned in this case, wherein a uniform sum of ten dollars is determined to be the damages, irrespective of the length or width of the right of way included in that zone. Manifestly, if such a sum is a just estimate of the damage to be awarded for a joint use of the smallest zone measured by feet, a like sum would seem inadequate for such a use of the largest zone measured by miles, irrespective of the varying widths. Answering this suggestion, the city contends that the railway interest in its right of way is determined by various deeds, franchises, etc., and that prior litigation has fixed the rights of the respective parties as to some of these varying zones. In so far as the railway company's rights are determined by various deeds or franchises, we do not think it in any way detracts from its right to have the damages for the city's right of joint user determined as a single right and in one verdict. In so far as the rights of the parties have been determined by prior litigation, it would seem as though the city should determine its rights as fixed by such litigation, and not subject them to the determination of the jury in this case as influencing the amount of damages to be awarded. This is, in effect, subjecting the title as between the city and the railway company to the jury, which does not seem to us to be proper in this proceeding.

Appellant suggests a serious question, as to whether or not the city can condemn the longitudinal right of way of the street railway so as to deprive the railway company of its use. But, inasmuch as it would seem to be the purpose of the city to condemn only a joint use, we will not now undertake to determine the question submitted by the suggestion.

In determining the damage to the railway company because of a five per cent change of grade in the avenue adjacent to the property occupied as shops and car barns, the city was permitted to proceed upon the theory that the measure of damage was the amount necessary to readjust the tracks from the main line into the shops and barns on a five per cent grade and the cost of a concrete retaining wall along the property line, together with an amount estimated to be sufficient as an insurance against the added risk of operation upon a five per cent grade. This amount was estimated by the city's witness as $2,156, which was the sum fixed by the jury in its verdict, showing the adoption of this theory. This measure of damages is incorrect. The true measure of damages is such a sum as would enable the railway company to readjust itself to the new grade so that it would occupy the same relative position to the proposed grade as it does to the present grade. The court so instructed the jury in one instance, but added that they might return a verdict in such a sum as would enable the railway company to readjust its tracks and plant to the proposed grade, together with the added cost of operation. This, in effect, permitted the jury to determine the proper measure of damage and to return a verdict accordingly.

Numerous other errors are suggested, but we have said enough to establish reversible error, and the other assignments will not be referred to.

The judgment is reversed.

Crow, C. J., Chadwick, Gose, and Parker, JJ., concur.

## ON REHEARING.

### [Decided February 5, 1915.]

PER CURIAM.—The respondent has filed a motion for a modification of the opinion heretofore filed herein, in which the conclusion was reached that the judgment appealed from should be reversed. As appears from the first opinion, this was a condemnation case brought by the city in which it was sought to condemn adjacent property for the purpose of widening Rainier avenue. The improvement affected more than 1,200 distinct pieces of property, and 3,500 parties respondent, upon which 1,417 verdicts were entered, but only one judgment. From this judgment the railway company only appealed. We think it is evident from a reading of the first opinion that the order of the court as to the reversal of the judgment was to affect the railway company only, and not disturb the judgment as to the other parties who took no appeal; but inasmuch as the judgment affects so many distinct pieces of property, we have concluded, in the interest of certainty, to modify the original opinion so that the same will read in the last line thereof: "The judgment is reversed only as to the appellant Seattle, Renton & Southern Railway Company."