[No. 12805.   Department One.   February 7, 1916.]

M. J. KALEZ *et al.*, *Appellants*, v. SPOKANE VALLEY LAND & WATER COMPANY, *Respondent*.[1]

NAVIGABLE WATERS—SHORE LANDS—TITLE OF STATE.   Shore lands on a navigable lake between ordinary high water and ordinary low water belong to the state, where they were unpatented at the time of the adoption of the state constitution.

NAVIGABLE WATERS—SHORE LANDS—APPROPRIATION AND SALE—PRIORITY OF RIGHTS.   Where state shore lands on a navigable lake were, under authority of the state, appropriated for irrigation purposes, a subsequent purchaser from the state takes with notice and subject to the appropriator's right to use them for purposes of irrigation by raising the lake to a higher level during the dry season.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered December 7, 1914, upon discharging the jury at the close of the evidence, dismissing an action in tort.   Affirmed.

*Robertson & Miller* and *E. W. Hand*, for appellants.

*Allen, Winston & Allen*, for respondent.

MOUNT, J.—This action was brought to recover damages alleged to have occurred by reason of the overflowing of plaintiffs' lands by the defendant.   The case was tried to the court and a jury.   At the conclusion of all the evidence, the court discharged the jury and entered a judgment of dismissal.   The plaintiffs have appealed from that judgment.

The facts are substantially as follows:   Liberty lake is a navigable body of water in Spokane county.   This lake

[1]Reported in 154 Pac. 1097.

has no natural outlet except at extreme high water, when it overflows at the north end through a small lake known as Loomis lake, toward the Spokane river.   Liberty lake is fed by melting snows in the spring from the adjacent hills, and rises, at extreme high water, to a point 2,057 feet above sea level.   Thereafter the water percolates, or evaporates, until late in the summer, when it reaches extreme low water at about 2,050 feet above sea level.

About the year 1900, the predecessors in interest of the respondent appropriated, under the statute, fifty cubic feet per second of time of the waters of Liberty lake for the purpose of irrigating lands on the plateau between the lake and the Spokane river.   The respondent company has succeeded to the rights of the original appropriator.

In the year 1903, the respondent constructed a dam across Liberty lake at the point where Liberty lake flows into Loomis lake, the latter lake being nonnavigable.   The purpose of this dam was to store the water in Liberty lake in the winter and the spring seasons for use in irrigation later in the summer.   The top of this dam was constructed at about the point of ordinary high water in Liberty lake, and some two feet below extreme high water.   The effect of this dam was to hold the water in Liberty lake for a longer period during the dry season than it would ordinarily maintain the higher level.   The meander line of Liberty lake was fixed by the government at about the point of extreme high water.

The rights of the Northern Pacific Railroad Company to the upland bordering on this lake attached in the year 1884. In the year 1896, the plaintiffs purchased under a contract from the Northern Pacific Railroad Company fractional section 25, Twp. 25, N., R. 45 E. W. M., bordering on Liberty lake, and in 1900 received a deed from the railway company for the land.

In the year 1909, the commissioner of state lands in this state served a notice upon the plaintiffs that they, being the upland owners, would have sixty days preference right to

purchase shore lands on the lake. On January 8, 1913, the plaintiffs entered into a contract with the state to purchase the shore lands abutting upon the lake. These shore lands consisted of lowlands at the south end of the lake which, at extreme high water, are overflowed, but at low water are bare and may be used for cultivation.

The record shows that, before the dam was constructed, these low lands would become dry about the first of June, and thereafter crops would mature thereon. The plaintiffs have cleared the lands and have cultivated a part thereof. The effect of the construction of this dam, as stated above, was to cause the water of Liberty lake to be held for a longer period during the summer season upon these low lands, and the plaintiffs are thereby prevented from raising crops thereon.

The trial court, under these facts, was of the opinion that these lands were shore lands; and that, since the respondent, under the statute, had appropriated the waters of the lake for the purposes of irrigation, and that the state had, prior to the sale of the shore lands to the appellants, authorized the respondent to appropriate the shore lands between the limits of ordinary high water and ordinary low water for storage purposes, the use of the shore lands for that purpose was rightful, and that the plaintiffs were therefore not entitled to recover.

That Liberty lake is a navigable lake is now beyond question. It was so held to be in *Kalez v. Spokane Valley Land & Water Co.*, 42 Wash. 43, 84 Pac. 395; *Madison v. Spokane Valley Land & Water Co.*, 40 Wash. 414, 82 Pac. 718, 6 L. R. A. (N. S.) 5; and *Spokane Valley Land & Water Co. v. Jones & Co.*, 53 Wash. 37, 101 Pac. 515. This being navigable water, it is plain that the shore lands between ordinary high water and ordinary low water were the property of the state. Const., art. 17. No claim is made that these shore lands were patented to any person prior to the adoption of the constitution. At any rate, there is nothing

in the record in this case to show any such patent. When it was shown, therefore, that the state had authorized the appropriation for the storage of water for the purposes of irrigation prior to the time the state sold the lands to the plaintiffs, the plaintiffs, of course, took with notice of that appropriation.

In *Kalez v. Spokane Valley Land & Water Co.*, *supra*, after holding that this lake was a navigable lake, this court, at page 48, said:

"The state would have the right to make such use of the water or of the bed of said lake as to it would seem proper, and could confer upon this respondent the rights of irrigation sought to be exercised by it, due regard being had to the rights of others. Were it made to appear that the dam or gates erected, or about to be constructed, by the respondent had or would raise the water above the ordinary high water line, and to the injury of appellants' property, the court would doubtless furnish relief. . . . But in this case the court found, and properly, we think, that the respondent in retaining the water during the winter months as aforesaid, had not caused the same to raise above the line of ordinary high water mark, and that it had not in the summer time or at any time withdrawn a sufficient amount of water to lower the lake below the line of ordinary low water mark. These things being true, we think that the respondent has acted within its legal rights and that the appellants have no legal cause of complaint."

The same is true in this case. The evidence conclusively shows that the dam in question is two feet below the line of high water, and at about the line of ordinary high water. The evidence also conclusively shows that the only effect of the dam is to maintain the water in Liberty lake for a longer period than it would naturally remain at the higher level, and that the use being made of the lake for storage purposes was within the lines of ordinary high water and ordinary low water.

In the case of *State ex rel. Ham, Yearsley & Ryrie v. Superior Court*, 70 Wash. 442, 126 Pac. 945, in referring

to the *Kalez* case, *supra*, where it was stated that the government of the United States could not dispose of shore lands below the high water mark, but that such lands would become the property of the state under art. 17, § 2, of the state constitution, we said in referring to those statements:

"It is suggested that these remarks were largely dictum and not necessary in the decision of that case. There is some reason for that suggestion in view of the facts there involved. Nevertheless the view there expressed seems to be fully in accord with the views of the supreme court of the United States as expressed in *Shively v. Bowlby*, 152 U. S. 1. We are of the opinion that common law riparian rights in navigable waters, if it can be said that the common law recognized such rights, have not existed or been recognized in this state since the adoption of our constitution; at least so far as the upland owner having any right to occupy in any way the beds or shore lands of such waters or to take from such waters water for irrigation as against the state, its grantees, or those who have appropriated such water for purposes of irrigation in compliance with the laws of the state."

It follows that, when the state authorized the respondent or its predecessors in interest to appropriate the waters of this navigable lake and the shore lands thereof for purposes of irrigation, and when the state sold the shore lands to the plaintiffs, it sold only the interest it then had. The plaintiffs acquired no greater right. They took the lands, therefore, subject to the right of the respondent to use them for purposes of irrigation. This use, if within the limits of ordinary high and ordinary low water, is a rightful use for which damages cannot be claimed.

We are satisfied, therefore, that the trial court was right, and the judgment is therefore affirmed.

MORRIS, C. J., ELLIS, FULLERTON, and CHADWICK, JJ., concur.